STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**04-1082**

**JASON M. RODRIGUEZ AND MISTY M. RODRIGUEZ**

**VERSUS**

**ED'S MOBILE HOMES OF BOSSIER CITY, LOUISIANA, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 55,886
HONORABLE CHARLES BLAYLOCK ADAMS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLIE COLOMBARO WOODARD**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Billie Colombaro Woodard, Elizabeth A. Pickett, and John B. Scofield,[*] Judges.

**AFFIRMED.**

James Brewster Gardner
Lunn, Irion, Salley, etc.
Post Office Box 1534
Shreveport, Louisiana 71165-1534
(318) 222-0662
COUNSEL FOR
DEFENDANT/APPELLANT
River Chase Homes, A Division of
Cavalier Mfg., Inc.

Charles Raymond Whitehead, Jr.
Whitehead Law Offices
Post Office Box 697
Natchitoches, Louisiana 71458
(318) 352-6481
COUNSEL FOR
PLAINTIFFS/APPELLEES:
    Jason M. Rodriguez
    Misty M. Rodriguez

---

[*]Judge John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore*.

WOODARD, Judge.

Purchasers of a mobile home sued the manufacturer and dealer for redhibition and attorney fees. The manufacturer alleged the existence of an arbitration agreement and brought a dilatory exception of prematurity. The trial court denied the exception, concluding that the arbitration agreement was adhesionary. Because we conclude that the purchasers' error vitiated any consent given, we find that the arbitration agreement is void between the parties and affirm the trial court's judgment, although on different grounds.

* * * * *

On May 23, 2000, Jason and Misty Rodriguez executed a purchase agreement for a mobile home from Ed's Mobile Homes in Bossier City, and made a down payment of $7,000.00. The reverse side of the document provided that title would pass to the Rodriguezes when the purchase price was paid in full or when they secured financing. It also stated that if they failed to complete the purchase for any reason, Ed's would be entitled to that "portion of the cash deposit which will reimburse [it] for expenses and other losses…and [Ed's] shall have all the rights of a seller upon breach of contract…."

On June 16, 2000, Jason and Misty met with a representative from Ed's at a restaurant in Many, Louisiana, to sign the closing papers for the mobile home. Along with signing several act of sale forms, they also signed a Dispute Resolution and Disclosure Agreement. The arbitration agreement states, in part, that:

> [t]he parties acknowledge and agree that this Mediation and/or Arbitration Agreement is a *condition of the sale* and is a *material part of the consideration for the sale* of the Home. [A]ny disputes or claims of any kind or nature...shall first be submitted for resolution through Mediation.... If a dispute is not resolved through Mediation the parties agree to settle the dispute through binding Arbitration....

(Emphasis added.)

On February 14, 2003, Jason and Misty filed a suit for redhibition, alleging numerous defects in their mobile home which River Chase and Ed's were unable to repair. River Chase filed a dilatory exception of prematurity on February 19, 2004,

alleging that the parties contractually agreed to arbitration of the dispute pursuant to the Dispute Resolution Agreement; thus, the suit was premature. Jason and Misty opposed the motion, and the trial court heard the matter on May 17, 2004.

On June 21, 2004, the trial court denied River Chase's motion, concluding that "the print [on the arbitration agreement] is almost impossible to read, the defendants have failed to avail themselves of these provisions until after suit was filed, and the provisions are unduly burdensome and extremely harsh." River Chase appeals the ruling.

*     *     *     *     *

**APPLICABLE LAW**

In urging us to uphold the arbitration agreement as valid and enforceable, River Chase argues that this court's holding in *Dennis v. CMH Manufacturing, Inc.* is applicable.[1]

In *Dennis*, the trial court concluded that it retained jurisdiction over a personal injury claim and a products liability claim and found that all other claims were subject to binding arbitration.[2] This court affirmed its ruling on the personal injury claim but concluded that the arbitration agreement contemplated the products liability claim; therefore, that claim was subject to binding arbitration.[3] However, unlike this case, the *Dennis* court focused on the scope of the arbitration agreement, not on its validity. When the trial court and this court concluded that the plaintiff's claims in *Dennis* were subject to binding arbitration, we, necessarily, concluded that the parties had already entered into a valid contract under state law, unlike the instant matter. Thus, *Dennis* is not applicable.

---

[1]99-1626 (La.App. 3 Cir. 11/14/00), 773 So.2d 818, *writ denied*, 00-3325 (La. 2/02/01), 784 So.2d 645.

[2]*Id.*

[3]*Id.*

2

**THE ARBITRATION AGREEMENT/CONSENT**

We recognize that Louisiana public policy strongly favors the resolution of disputes through the arbitration process.[4] However, this does not mean that all arbitration provisions are valid under state law.[5] The state arbitration statute provides that "[a] provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract…shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract."[6]

One of the conditions of a valid contract is the consent of both parties.[7] Consent may be vitiated by error.[8] Error can "invalidate a contract if it is related to the principle cause, or motive, for making the agreement"[9] and is "known or should have been known to the other party."[10] Cause is the "reason why a party obligates himself."[11]

In the case at bar, the Rodriguezes testified that when they signed the original agreement and made their down payment of $7000.00, there was no discussion of the requirement of an arbitration or mediation agreement. The latter was presented to them, for the first time, at closing; they signed it because they thought they *"had to"* in order to get delivery of their mobile home. Misty said that she was told the documents she signed were "just legal stuff we *had to* sign… to buy the trailer." (Emphasis added.) Jason confirmed that "if we wanted a place to live" he *had* to sign the papers. (Emphasis added.)

---

[4] *Williams v. Litton*, 03-805 (La.App. 3 Cir. 12/23/03), 865 So.2d 838, *writ denied,* 04-496 (La.4/8/04), __ So.2d __.

[5] *See Sutton's Steel Supply, Inc. v. BellSouth Mobility, Inc.* 00-511 (La.App. 3 Cir.12/13/00), 776 So.2d 589, *writ denied*, 01-152 (La. 3/16/01), 787 So.2d 316.

[6] La.R.S. 9:4201.

[7] La. Civ.Code art. 1927.

[8] La. Civ.Code art. 1948.

[9] *Scott v. Bank of Coushatta,* 512 So.2d 356, 361 (La.1987).

[10] *Hidalgo v. Julian*, 98-83, p.7 (La. App. 3 Cir. 5/20/98), 715 So.2d 498, 501.

[11] La. Civ.Code art. 1967.

3

However, their understanding was error under the law. The parties had already agreed upon the terms of contract of sale before closing, and binding arbitration was not one of them. According to the original purchase agreement's terms, title of the mobile home passed to the Rodriguezes once they paid for the mobile home, either through cash or financing. Contrary to what they were told, they did not need to sign the arbitration agreement to take delivery of their home.

Further, River Chase knew or should have known that the arbitration agreement could not be part of the consideration of the original contract. A party cannot, unilaterally, assign additional consideration for the perfection of a sale.

Thus, the elements required for invalidation of the contract by error are present, and we rescind the arbitration agreement because it is not valid for lack of consent.

## CONCLUSION

Because we find that error vitiated the Rodriguezes' consent regarding the arbitration agreement, we affirm the trial court's ruling and cast costs of this appeal are on River Chase.

**AFFIRMED.**