# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1200


ROLAND J. ABSHIRE, ET AL.

VERSUS

BELMONT HOMES, INC., ET AL.


************

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT,
PARISH OF JEFFERSON DAVIS, NO. C-598-03,
HONORABLE G. BRADFORD WARE, DISTRICT JUDGE

************

## JIMMIE C. PETERS
### JUDGE

************

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and J. David Painter, Judges.


**AFFIRMED.**


Steven W. Hale
Steven W. Hale & Associates, Inc.
1735 Ryan Street
Lake Charles, LA  70601-6049
(337) 433-0612
COUNSEL FOR PLAINTIFF/APPELLEE:
    Roland J. Abshire, et al.

V. Ed McGuire, III
Plauché, Smith & Nieset
P. O. Drawer 1705
Lake Charles, LA  70602
(337) 436-0522
COUNSEL FOR DEFENDANT/APPELLANT:
    Belmont Homes, Inc.

PETERS, J.

This appeal arises from a suit in redhibition and for property and personal injury damages in which the plaintiffs named Belmont Homes, Inc. as one of a number of defendants. Belmont Homes, Inc. appeals the trial court's denial of its dilatory exception of prematurity. For the following reasons, we affirm the trial court's judgment, although on different grounds.

## DISCUSSION OF THE RECORD

### *Procedural History*

This litigation involves a manufactured home constructed by Belmont Homes, Inc. (Belmont Homes) and sold by United Homes, Inc. (United Homes) to Ronald J. Abshire and his mother-in-law, Shirley May Simmons (who apparently appeared primarily as a cosigner).[1] On August 14, 2003, Mr. Abshire and his wife, Kari, individually and on behalf of their minor child, Khristen, and Ms. Simmons filed this suit against Belmont Homes and United Homes as well as the Abshire's homeowner's insurer, National Security Fire & Casualty (NSFC). In their petition, the plaintiffs asserted that United Homes and Belmont Homes were liable to them for negligent installation, negligent construction, breach of contract, failure to warn them of certain conditions, and violations of various state and federal laws and manufacturing safety standards. They asserted that for these reasons, and because the manufactured home contained various latent defects, they were entitled to recision of the sale with the return of the purchase price, attorney fees, and property and personal injury damages.

United Homes answered the petition and filed a cross-claim against Belmont Homes, seeking indemnity from Belmont Homes for any amounts for which it might

[1]The background to this litigation as stated in this opinion is based on the content of the pleadings, memoranda, and exhibits attached to the memoranda found in the record. Neither party offered any evidence at the hearing on the exception of prematurity. Unless otherwise stated, the parties to the litigation do not contest the validity of the facts stated herein.

be cast in judgment. NSFC answered the plaintiffs' petition and asserted a cross-claim against both Belmont Homes and United Homes, also seeking indemnity for any amounts for which it might be cast in judgment. Belmont Homes responded to the plaintiffs' petition with an exception of prematurity in which it asserted that any claims against it by the plaintiffs were required to first be submitted to arbitration. At a hearing held on May 5, 2004, the trial court denied the exception of prematurity. Belmont Homes timely perfected this appeal, asserting in its sole assignment of error that the trial court erred in not requiring arbitration of all the claims asserted against it by the plaintiffs.

### *Factual History*

Most of the facts concerning the transaction at issue are not in dispute. United Homes is in the business of selling manufactured homes to the public, and Belmont Homes is in the business of building or constructing manufactured homes. Included within United Homes' inventory of manufactured homes are units built by Belmont Homes.

On March 7, 2001, Mr. Abshire and Ms. Simmons appeared at United Homes' business location in Lake Charles, Louisiana, and purchased a manufactured home built by Belmont Homes. At the time they purchased the manufactured home, Mr. Abshire and Ms. Simmons signed three separate documents. These documents were not introduced into evidence at the hearing on the dilatory exception, but were attached to the pre-hearing memoranda filed by the litigants.

Appellate courts are courts of record and may not review evidence that is not in the appellate record or receive new evidence. La.Code Civ.P. art. 2164; *Sutton's Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 00-0511, 00-0898 (La.App. 3 Cir.

2

12/13/00), 776 So.2d 589, *writ denied*, 01-0152 (La. 3/16/01), 787 So.2d 316. However, despite the fact that the litigants did not introduce these documents into evidence, they have treated the documents as if they were introduced; therefore, we will treat their acknowledgment as a judicial confession of the existence of the documents as evidence. "A judicial confession constitutes full proof against the party who made it." La.Civ.Code art. 1853. "A judicial confession is indivisible and it may be revoked only on the ground of error of fact." *Id.* "It is also well settled that a judicial confession is a party's explicit admission of an adverse factual element and that it has the effect of waiving evidence as to the subject of the admission, of withdrawing the subject matter of the confession from issue." *Cheatham v. City of New Orleans*, 378 So.2d 369, 375 (La.1979)*; see also Sutton's Steel & Supply, Inc.*, 776 So.2d 589.

The first of these documents at issue is a single-page document entitled "**PURCHASE AGREEMENT/BILL OF SALE**" (purchase agreement). This document contains the signature of a representative of United Homes and the signatures of Mr. Abshire and Ms. Simmons; describes the manufacture home by make, model, and serial number; sets forth the particulars of the sales transaction; disclaims warranty protection; and, despite the disclaimer of warranty protection, provides for the resolution under Louisiana law in the Parish of Calcasieu of any disputes arising from the sale or warranty of the manufactured home. The purchase agreement provides no reference to Belmont Homes other than the description of the manufactured home purchased, and no representative of Belmont Homes signed the agreement indicating any involvement by Belmont Homes in the transaction.

3

Mr. Abshire, Ms. Simmons, and the same person who signed the purchase agreement for United Homes[2] also signed a second single-page document entitled "**DELIVERY AGREEMENT**" (delivery agreement).[3] This document identifies the manufactured home and specifically sets forth the respective obligations of the plaintiffs and United Homes concerning the delivery and set up of the manufactured home. Additionally, the delivery agreement provides that the warranty on the manufactured home is provided by the builder, not the dealer, yet it directs the purchaser to contact the United Homes service manager to request warranty service. No representative of Belmont Homes signed the delivery agreement to accept the warranty responsibility.

Contemporaneously with the execution of the purchase agreement, Mr. Abshire and Ms. Simmons also executed a one-page document entitled "**ACKNOWLEDGMENT AND AGREEMENT**" (arbitration agreement). Although this document contains the signature of Mr. Abshire, Ms. Simmons, and a representative of Belmont Homes, it is incomplete in a number of respects. Specifically, it is not dated and provides for an appearance by United Homes as the retailer of the manufactured home. United Homes made no appearance, although the document also provides a place for the signature of its representative at the bottom of the page. Additionally, while Mr. Abshire and Ms. Simmons executed this document, the party who ultimately executed the document on behalf of Belmont Homes was not present, and the record does not establish when he affixed his signature. Additionally,

---

[2]The United Homes agent's signature is not sufficiently clear on either document to allow one to ascertain the person's name.

[3]The delivery agreement is not dated, and the record does not make it clear whether it was executed at the same time as the purchase agreement or when the manufactured home was delivered.

the record is silent concerning who represented Belmont Homes in presenting the arbitration agreement to Mr. Abshire and Ms. Simmons at United Homes' Lake Charles location. It is clear that neither Mr. Abshire nor Ms. Simmons had any input in the content of the preprinted material comprising the bulk of all three documents at issue.

In the arbitration agreement, Mr. Abshire and Ms. Simmons acknowledged generally that they purchased the manufactured home from existing inventory, that they had been supplied with certain "Homeowner Documents" which included Belmont Homes' warranty, that they had been made aware of certain public health notices associated with the transaction, and that they had visually inspected the manufactured home and were satisfied with its appearance and condition. Concerning the warranty, Mr. Abshire and Ms. Simmons specifically acknowledged that their rights in that regard were those "as provided in the Homeowner Documents."

The warranty provision of the arbitration agreement further provides that "[a]ll warranty claims against [Belmont Homes] . . . are to be handled as provided in the MANUFACTURER's Warranty which PURCHASER has read and understands or will read and be familiar with." Because the "Homeowner Documents" were not introduced into evidence, it is not clear whether they provided a procedure for handling warranty claims different from United Homes' delivery agreement.

The arbitration agreement further provides that it constitutes the entire agreement between the parties and that it is to "be governed by the laws of the State of Mississippi." It also includes a savings clause which reads as follows:

> If any provision of this Agreement is found to be unenforceable (Including, without limitation any provision of Section 10 hereof), such provision shall be considered severed from the remaining provisions of this Agreement (including, without limitation, the remaining provisions

of Section 10 hereof), and such remaining provisions shall be and remain in full force and effect.

The arbitration provision at issue is the "Section 10" referred to in the savings clause and reads in full as follows:

All parties acknowledge and agree that this Agreement and the performance of the transactions contemplated hereby evidence transactions which involve a substantial nexus with interstate commerce. Accordingly, any dispute; controversy or claim of any kind or nature which has arisen or may arise between the parties, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents, and contractors (including any dispute, controversy or claim relating to the validity of this arbitration clause), whether arising out of past, present or future dealings between the parties, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents and contractors shall be governed by the Federal Arbitration Act and shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction hereof. Such arbitration proceedings shall be held at the principal place of business of the Manufacturer or at such location as shall be designated by Manufacturer, and shall be heard by an arbitrator who is either a (i) retired judge or (ii) practicing attorney who has conducted more than three (3) arbitrations during the preceding five (5) years. Without limiting the generality of the foregoing, it is the intention of the parties to resolve by binding arbitration, as provided herein, all past, present, and future disputes, whether in tort, contract or otherwise, concerning or related to (i) the manufactured home, its sale, warranty, set up, repair, installation, manufacture, financing, insurance, its condition, (ii) the validity of this Agreement, and (iii) any other dealings, business or otherwise, between the parties, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents, and contractors. The parties understand and agree that the arbitrator shall have all powers provided by law, and may award any legal or equitable relief, including, without limitation, money damages; declaratory relief and injunctive relief; provided, however that the arbitrator will have no power to award punitive damages or other damages not measured by the prevailing party's actual damages. **EACH OF THE PARTIES HERETO WAIVES ANY RIGHT TO JURY TRIAL WITH RESPECT TO ANY CONTROVERSY BETWEEN THE PARTIES, THEIR SUCCESSORS, ASSIGNS, HEIRS, REPRESENTATIVES, PARENT COMPANIES, DIVISIONS, SUBSIDIARIES,**

**AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, AND CONTRACTORS.**

After hearing the arguments of counsel, the trial court found that the arbitration agreement was ambiguous when considered in light of the content of the purchase and delivery agreements and therefore declined to stay the proceedings or order arbitration. Specifically, the trial court concluded that the conflict in the documents with regard to the law applicable to disputes rendered the arbitration agreement unenforceable. After this ruling, Belmont Homes timely perfected this appeal.

**OPINION**

The dilatory exception of prematurity is provided for in La.Code Civ.P. art. 926(A)(1), and its function is to raise the issue that a judicial cause of action does not yet exist because of some unmet prerequisite condition. *Blount v. Smith Barney Shearson, Inc.*, 96-0207 (La.App. 4 Cir. 2/12/97), 695 So.2d 1001, *writs denied*, 97-0952, 97-0970 (La. 5/30/97), 694 So.2d 246, 247. "It usually is utilized in cases where the law or a contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action," and "[t]he exceptor has the initial burden of showing that an administrative remedy was available, thus making the judicial action premature." *Id.* at 1003. Thus, the burden is upon Belmont Homes to establish that a valid and enforceable arbitration agreement exists. *See id.* In determining whether a party is bound by an arbitration agreement, we apply ordinary contract principles, and a party cannot be required to submit to arbitration a dispute that he has not agreed to submit. *Tresch v. Kilgore*, 03-0035 (La.App. 1 Cir. 11/7/03), 868 So.2d 91. Whether a court should compel arbitration is a question of law. *Dufrene v. HBOS Mfg.*, 03-2201 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206. Therefore,

7

"[a]ppellate review of questions of law is simply to determine whether the trial court was legally correct or incorrect." *Id.* at 1209.

As previously stated, the trial court concluded that the arbitration agreement was ambiguous because the choice-of-law provision conflicted with that found in the purchase agreement. However, at the May 5, 2004 hearing on the exception, Belmont Homes' counsel asserted to the trial court that, despite the clear language of the arbitration agreement with regard to the application of Mississippi law and the Federal Arbitration Act, 9 U.S.C.A. § 1, *et seq.*, "the Statutes are fairly clear. It's R.S. 9:4201 and a couple of statutes thereafter. . . . There were some issues as to what law would apply. As far as the application, we are both arguing Louisiana law. I don't think that's an issue." Thus, counsel for Belmont Homes judicially confessed that Louisiana law, and specifically the Louisiana Binding Arbitration Law, La.R.S. 9:4201, *et seq.*, applied to the arbitration agreement.[4] *See* La.Civ.Code art. 1853.

This judicial confession effectively eviscerates the trial court's reasons for judgment. Thus, we find that the trial court erred in rejecting the application of the arbitration clause for the reasons asserted in its reasons for judgment. However, we find that the trial court reached the right result in determining that the arbitration agreement was not enforceable.

In determining whether any arbitration agreement should be enforced, we must first recognize that there exists a strong legislative policy in Louisiana favoring arbitration. *Woodson Constr. Co. v. R.L. Abshire Constr. Co.*, 459 So.2d 566 (La.App.

---

[4]In its appellate brief, Belmont Homes does not specifically repeat the trial stipulation that Louisiana law and the Louisiana Arbitration Law applies to this matter. However, its entire argument cites only Louisiana law. We note, however, that application of the Louisiana Binding Arbitration Law as opposed to the Federal Arbitration Act is of little consequence because, as pointed out by the supreme court in *International River Center v. Johns-Manville Sales Corp.*, 02-3060, p. 6 (La. 12/3/03), 861 So.2d 139, 143, the Federal Arbitration Act is "a collection of statutes which is very similar to the Louisiana Binding Arbitration Law."

8

3 Cir. 1984). In fact, "[a]ny doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration." *Id.* at 569. In support of this strong policy, Louisiana has enacted the Louisiana Arbitration Law. With regard to the validity of arbitration agreements, La.R.S. 9:4201 provides:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Additionally, La.R.S. 9:4202 provides:

> If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

Thus, pursuant to La.R.S. 9:4202, "a court *shall* stay the trial of an action in order for arbitration to proceed if any party applies for such a stay and shows (1) that there is a written agreement and (2) the issue is referable to arbitration under the arbitration agreement, as long as the applicant is not in default in proceeding with the arbitration." *Int'l River Ctr. v. Johns-Manville Sales Corp.*, 02-3060, p. 3 (La. 12/3/03), 861 So.2d 139, 141.

"However, this does not mean that all arbitration provisions are valid under state law." *Rodriguez v. Ed's Mobile Homes of Bossier City, La.*, 04-1082, p. _ (La.App. 3 Cir. 12/8/04), ___ So.2d ___, ___. Rather, application of arbitration law presupposes the existence of a written agreement not subject to any grounds "at law or in equity" for its revocation per La.R.S. 9:4201. *See id.* Importantly, "[o]ne of the

9

conditions of a valid contract is the consent of both parties. Consent may be vitiated by error. Error can 'invalidate a contract if it is related to the princip[al] cause, or motive, for making the agreement' [*Scott v. Bank of Coushatta*, 512 So.2d 356, 361 (La.1987)] and is 'known or should have been known to the other party.' [*Hidalgo v. Julian*, 98-83, p. 7 (La.App. 3 Cir. 5/20/98), 715 So.2d 498, 501.] Cause is the 'reason why a party obligates himself.' [La.Civ.Code art. 1967.]" *Id.* at ___ (footnote omitted).

In *Rodriguez*, the plaintiffs purchased a mobile home. Following the purchase, the plaintiffs filed suit against the manufacturer and dealer for redhibition and attorney fees. The manufacturer filed a dilatory exception of prematurity, alleging the existence of an arbitration agreement. The trial court denied the exception, finding that the arbitration agreement was adhesionary. This appellate court affirmed the trial court's judgment, but on different grounds.

Specifically, we noted that when the plaintiffs signed the original agreement and made a down payment, there was no discussion of the requirement of arbitration. Instead, the arbitration agreement was presented to the plaintiffs for the first time at the closing. The plaintiffs signed the arbitration agreement because they thought they had to do so in order to purchase the mobile home. We concluded: "[T]heir understanding was error under the law. The parties had already agreed upon the terms of contract of sale before closing, and binding arbitration was not one of them. According to the original purchase agreement's terms, title of the mobile home passed to the [plaintiffs] once they paid for the mobile home, either through cash or financing. Contrary to what they were told, they did not need to sign the arbitration agreement to take delivery of their home." *Id.* at ___. Importantly, we also observed that the

manufacturer "knew or should have known that the arbitration agreement could not be part of the consideration of the original contract. A party cannot, unilaterally, assign additional consideration for the perfection of a sale." *Id.* at ___. Thus, we rescinded the arbitration agreement as being invalid for lack of consent.

Likewise, in the instant case, under the purchase agreement the plaintiffs paid $3,640.00 as a down payment and financed $32,696.50. Title of the mobile home passed to them once they made the down payment and financed the mobile home. The plaintiffs did not need to sign the arbitration agreement to take delivery of their mobile home either per the purchase agreement or per the delivery agreement, both of which documents were executed by United Homes and the plaintiffs, not Belmont Homes. Further, although the plaintiffs signed the arbitration agreement at the same time they signed the purchase agreement, there is no evidence that the arbitration agreement was part of the consideration of the original purchase agreement. In any event, as in *Rodriguez*, Belmont Homes, the third-party manufacturer who was not a party to the purchase agreement, could not unilaterally assign additional consideration for the perfection of the sale. Additionally, the provision of a warranty by Belmont Homes has not been shown to constitute cause or consideration for the arbitration agreement because La.R.S. 51:911.25 provides mandatory warranty rights in connection with manufactured homes, and Belmont Homes has failed to show that its warranty provided the plaintiffs with even greater rights than provided in La.R.S. 51:911.25. Importantly, under La.R.S. 51:911.25(C), a "buyer may not waive his rights under this Part and any such waiver is hereby prohibited as contrary to public policy and shall be unenforceable and void."

11

For the reasons stated, we find that the trial court reached the right result in rejecting enforcement of the arbitration agreement; thus, we affirm the trial court's judgment. In doing so, we find it unnecessary to address any other potential grounds in law or equity for rescission of the contract, such as lack of mutuality and whether this extensive arbitration agreement was so lacking in equal bargaining power as to constitute a contract of adhesion. Additionally, we do not address the scope of the arbitration agreement and leave to another day the issue of whether an arbitration clause can be extended to cover future tort claims despite the restrictive language of La.R.S. 9:4201.[5]

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court rejecting the exception of prematurity filed by Belmont Homes, Inc. We assess all costs of this appeal to Belmont Homes, Inc.

**AFFIRMED.**

---

[5]Louisiana Revised Statutes 9:4201 speaks only of controversies "arising out of the contract . . . or an agreement in writing . . . to submit to arbitration any controversy existing between them at the time of the agreement to submit . . . ."