STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-0140

COURTNEY TASSIN ST. ROMAIN, ET VIR

VERSUS

CAPPAERT MANUFACTURED HOUSING, INC., ET AL.

************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 2004-6745-B,
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

AFFIRMED AND REMANDED.

Fred A. Pharis
Pharis Law Offices
831 DeSoto Street
Alexandria, LA 71301
(318) 445-8266
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Courtney Tassin St. Roman and Ricky St. Romain

Walter K. Jamison, III
Marjorie B. Breaux
Daigle, Scofield, Rivera & Crawford, LLC
303 W. Vermilion, Suite 210
Lafayette, LA 70501
(337) 234-7000
COUNSEL FOR DEFENDANT/APPELLANT:
    Cappaert Manufactured Housing, Inc.

PETERS, J.

This appeal arises from a suit in redhibition and for damages in connection with Courtney Tassin St. Romain's purchase of a manufactured home. The manufacturer of the home, Cappaert Manufactured Housing, Inc. (Cappaert), appeals the trial court's denial of its dilatory exception of prematurity, which exception was based on an assertion that the claim was required to first be submitted to arbitration. For the following reasons, we affirm and remand for further proceedings.

## DISCUSSION OF THE RECORD

On February 1, 2002, prior to her marriage to Ricky St. Romain, Mrs. St. Romain purchased a Cappaert manufactured home from Chatelain's Bayou Housing Inc. (Chatelain's) under her maiden name, Courtney Tassin. On August 9, 2004, Mr. and Mrs. St. Romain, individually and on behalf of their minor child, Chandler, filed the instant suit in redhibition and for damages, alleging that, since the date of the sale, the "home has shown latent and/or hidden defects," among other problems. The St. Romains named as defendants Cappaert; Chatelain's; and Russell Morace Mobile Home Movers, Inc., which delivered the home and set it up.

Cappaert responded to the St. Romains' petition by filing a dilatory exception of prematurity in which it asserted that the St. Romains had "agreed in writing to arbitration and/or the claims at issue are subject to binding arbitration." Cappaert attached to its memorandum in support of the exception a copy of a document entitled "**OWNER REGISTRATION CARD**," which contains the following acknowledgment:

> I (we) hereby acknowledge receipt of the Manufacturer's Limited Warranty. I (we) understand and agree that activation of the Limited Warranty is conditioned, without limitation, upon my (our) acceptance of the provisions for <u>Binding Arbitration Pursuant to the Federal Arbitration Act</u> and all other terms and conditions of the Limited Warranty. By signing below, I (we) indicate my (our) agreement with

and acceptance of all the terms and conditions of the Limited Warranty. I (we) also acknowledge that I (we) have read and understand the Important Health Notice and Owner's manual received with this manufactured home."

Below the acknowledgment, on a line designated for the signature of the owner, appears in handwriting the name "Courtney Tassin."

On October 25, 2004, the trial court held a hearing on the exception. At the hearing, Harold Mouser, a former employee of Cappaert who currently provides services for Cappaert through another company, testified that the owner registration card is part of an insert placed into the owner's manual of a manufactured home. The top portion of the insert is entitled "**BINDING ARBITRATION AGREEMENT**" and contains a place for the signatures of the retailer, Cappaert, the owner of the home, and witnesses. The owner registration card detaches from this top portion of the insert and is in the nature of a self-addressed, postage-paid postcard to be sent to Cappaert. Mr. Mouser testified that it is Cappaert's normal procedure to place the owner's manual in a drawer in the mobile home for delivery of the home to the dealer. Susan Chatelain, the secretary/treasurer/owner of Chatelain's, confirmed that the owner's manual is placed in a drawer in the mobile home.

Mr. Mouser testified that the owner registration card bearing what purports to be Mrs. St. Romain's signature was part of the file maintained by Cappaert in connection with Mrs. St. Romain's mobile home. The owner registration card contains various information, including a date of purchase of February 5, 2002, not February 1, 2002. The front of the owner registration card has a postmark from Alexandria, Louisiana, and has a postmark date of March 1, 2002; Mrs. St. Romain lives in Hessmer, Louisiana. Mrs. St. Romain denied signing the owner registration card and testified that she had no knowledge of who signed her name to it. Various

2

documents containing Mrs. St. Romain's signature were introduced into evidence, including a promissory note corresponding to the date of the purchase of the mobile home. Mrs. St. Romain's signature on these documents bears no resemblance to the signature on the owner registration card. She denied ever seeing the owner registration card prior to her attorney receiving it.

Furthermore, Mrs. St. Romain testified that she did not even find her owner's manual until "around the beginning of" 2004, when she discovered it in a drawer in the mobile home. Mrs. St. Romain's owner's manual contains the document entitled "**BINDING ARBITRATION AGREEMENT**," but this agreement contains no signatures and contains only the serial number of the home.

Moreover, Mrs. St. Romain testified that, prior to the sale, arbitration was not discussed with her. Ms. Chatelain denied discussing arbitration with Mrs. St. Romain either before or after the sale. Ms. Chatelain also stated that it is not her practice to have any of her customers sign the arbitration agreement. She also testified that she did not remember showing the owner's manual to Mrs. St. Romain prior to the sale.

The trial court found that the signature on the owner registration card was not Mrs. St. Romain's. The trial court concluded that "Cappaert has not shown more probable than not that any meeting of the minds or agreement of the parties agreeing to arbitration" had occurred. Accordingly, by judgment dated November 8, 2004, the trial court dismissed Cappaert's exception of prematurity. Cappaert has appealed this judgment.

## OPINION

The party filing the dilatory exception of prematurity, based on the existence of an agreement to arbitrate, has the initial burden of establishing that a valid and

3

enforceable arbitration agreement exists. *See Abshire v. Belmont Homes, Inc.*, 04-1200 (La.App. 3 Cir. 3/2/05), 896 So.2d 277. We apply ordinary contract principles to determine whether a party is bound by an arbitration agreement. *Id.* One of the conditions precedent to a valid contract is the consent of both parties. La.Civ.Code art. 1927; *Abshire*, 896 So.2d 277. "Consent may be vitiated by error . . . ." La.Civ.Code art. 1948. Error may invalidate a contract if the error is related to the principal cause for making the agreement and is known or should have been known to the other party. La.Civ.Code art. 1949; *Abshire*, 896 So.2d 277. Importantly, while arbitration agreements are favored, a party cannot be required to submit to arbitration a dispute that he or she has not agreed to submit. *Abshire*, 896 So.2d 277.

In the instant case, there is absolutely no evidence that Mrs. St. Romain agreed to be bound by the arbitration agreement other than the fact that her name appears on the owner registration card. However, Mrs. St. Romain denied that she signed the owner registration card, and even an untrained eye can discern that the signature on the owner registration card bears absolutely no resemblance to Mrs. St. Romain's signature as it appears on other documents she signed in connection with the mobile home. Further, both Mrs. St. Romain and Ms. Chatelain testified to the effect that arbitration was not discussed at the time of the sale, and Mrs. St. Romain was not even aware of the owner's manual containing the arbitration agreement until 2004.

Nevertheless, Cappaert argues that there is no requirement that an arbitration agreement be signed, as long as it is in writing. Cappaert urges that the St. Romains sought to receive the benefit of the limited warranty, which was conditioned on the agreement to arbitrate, and did receive the benefit of that warranty through service work performed on the mobile home after the sale. Cappaert also suggests that the

4

St. Romains are continuing to seek the benefit of the warranty through suing in reliance upon it. In other words, Cappaert contends that by their actions the St. Romains have consented to the arbitration agreement.

We note that the Cappaert arbitration agreement anticipated a signature to show acceptance of the terms. However, without discussing the law regarding the necessity or lack thereof of a signature in the confecting of a valid arbitration agreement, the record does not support that the St. Romains consented to be bound by the agreement through their actions. Pursuant to La.Civ.Code art. 1927, even considering that acceptance may be made by action or inaction, such acceptance must be under circumstances "clearly indicative of consent." Under the circumstances of this case, a sophisticated manufacturer is seeking to enforce an arbitration agreement against consumers based on their actions in seeking to address alleged defects in/problems with the mobile home. As explained above, the record contains no evidence that the St. Romains were even aware of the arbitration provisions; rather, all of the evidence points to the fact that they were not aware of the arbitration provisions. Thus, they could not have consented to that of which they were not even aware, as consent implies volition. The mere presence of the unsigned arbitration agreement in the owner's manual in a drawer in the mobile home is insufficient to establish any consent to be bound by its terms.

Cappaert interposes federal jurisprudence for the proposition that paper agreements enclosed within the package of an item are sufficient to put consumers on notice of the terms and conditions of a transaction. Without discussing the federal jurisprudence, we reiterate that Louisiana law, as cited above, requires consent for the formation of a valid contract. "In determining whether the parties agreed to arbitrate

5

a certain matter, courts apply the contract law of the particular state that governs the agreement." *Snyder v. Belmont Homes, Inc.*, 04-445, p. __ (La.App. 1 Cir. 2/16/05), ___ So.2d ___, ___. Cappaert has cited us to no Louisiana jurisprudence that allows the mere presence of an insert with a consumer item, without more, to meet the consent requirement.

Even assuming that the St. Romains somehow consented to the arbitration agreement, the evidence supports that any such consent was vitiated by error. Importantly, Cappaert has misconstrued its obligations to the St. Romains as a manufacturer of mobile homes and has misconstrued the St. Romains' rights under Louisiana law.

In *Abshire*, 896 So.2d 277, the plaintiffs actually signed the arbitration agreement at issue in connection with their purchase of a mobile home. However, we concluded that the plaintiffs did not need to sign the arbitration agreement in order to take delivery of their mobile home either per the purchase agreement or per the delivery agreement, both of which documents had been executed by the retailer and the plaintiffs, and not by the manufacturer. Additionally, there was no evidence in *Abshire* that the arbitration agreement formed part of the consideration for the original purchase agreement. In any event, we held that the manufacturer, who was not a party to the purchase agreement, could not unilaterally assign additional consideration for the perfection of the sale. We also observed that the provision of a warranty by the manufacturer was not shown to constitute cause or consideration for the arbitration agreement because La.R.S. 51:911.25 provides mandatory warranty rights in connection with manufactured homes, rights which a purchaser may not waive. We found that the manufacturer had failed to show that its warranty provided

6

greater rights to the plaintiffs than those provided in La.R.S. 51:911.25. Thus, we affirmed the judgment of the trial court rejecting enforcement of the arbitration agreement.

As in *Abshire*, there is no evidence in the instant case that the arbitration agreement at issue formed part of the consideration for the original purchase agreement, nor could Cappaert unilaterally assign additional consideration for the perfection of the sale. While the owner registration card purports to condition activation of Cappaert's warranty in part upon acceptance of the provisions for binding arbitration pursuant to the Federal Arbitration Act, activation of the warranty by Cappaert has not been shown to constitute cause or consideration for the arbitration agreement because Cappaert has failed to show that its warranty provided greater rights than those provided in La.R.S. 51:911.25.

The trial court concluded that Cappaert failed to prove an agreement to arbitrate, and we not only find no manifest error in that conclusion, we find that the trial court's conclusion was eminently correct. Accordingly, we affirm the trial court's dismissal of Cappaert's exception of prematurity, and we remand this case to the trial court for further proceedings consistent with this opinion.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment and remand the case for further proceedings consistent with this opinion. We assess costs of this appeal to Cappaert Manufactured Housing, Inc.

**AFFIRMED AND REMANDED.**

7