# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-249


**JEANERETTE LUMBER & SHINGLE**

**COMPANY, LLC**

**VERSUS**

**FLORIDA GAS TRANSMISSION COMPANY**

**LLC, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 87,263
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell, Van H. Kyzar, Candyce G. Perret, and Jonathan W. Perry, Judges.


**REVERSED AND REMANDED.**

**Gladstone N. Jones, III**
**Peter N. Freiberg**
**Eberhard Darrow Garrison**
**Emma Elizabeth Antin Daschbach**
**H. S. Bartlett, III**
**John T. Arnold**
**Kevin E. Huddell**
**Jones, Swanson, Huddell & Garrison, LLC**
**601 Poydras Street, Suite 2655**
**New Orleans, LA 70130**
**(504) 523-2500**
**COUNSEL FOR PLAINTIFF/APPLICANT:**
    **Jeanerette Lumber & Shingle Company, L.L.C.**

**Bernard E. Boudreaux, Jr.**
**Jones, Swanson, Huddell & Garrison, LLC**
**301 Main Street, Suite 1920**
**Baton Rouge, LA 70801**
**(225) 810-3165**
**COUNSEL FOR PLAINTIFF/APPLICANT:**
    **Jeanerette Lumber & Shingle Compant, L.L.C.**

**James R. Swanson**
**Lance C. McCardle**
**E. Blair Schilling**
**Fishman Haygood, L.L.P.**
**201 St. Charles Avenue, Suite 4600**
**New Orleans, LA 70170-4600**
**(504) 586-5252**
**COUNSEL FOR PLAINTIFF/APPLICANT:**
    **Jeanerette Lumber & Shingle Company, L.L.C.**

**J. Michael Veron**
**J. Rock Palermo, III**
**Alonzo P. Wilson**
**Turner D. Brumby**
**Veron, Bice, Palermo & Wilson, L.L.C.**
**P. O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFF/APPLICANT:**
    **Jeanerette Lumber & Shingle Company, L.L.C.**

**Michael R. Phillips**
**Claire E. Juneau**
**Kean Miller LLP**
**909 Poydras Street, Suite 3600**
**New Orleans, LA 70112**
**(504) 585-3050**
**COUNSEL FOR DEFENDANTS/RESPONDENTS:**
     **Chevron U.S.A., Inc.**
     **Chevron U.S.A. Holdings, Inc.**

**Charles S. McCowan, III**
**Pamela Roman Mascari**
**Kean Miller LLP**
**P. O. Box 3513**
**Baton Rouge, LA 70821-3513**
**(225) 387-0999**
**COUNSEL FOR DEFENDANTS/RESPONDENTS:**
     **Chevron U.S.A., Inc.**
     **Chevron U.S.A. Holdings, Inc.**

**Eric J. Mayer**
**Alexandra White**
**Johnny C. Carter**
**Laranda Walker**
**Susman Godfrey, L.L.P.**
**1000 Louisiana Street, Suite 5100**
**Houston, TX 77002-5096**
**(713) 651-9366**
**COUNSEL FOR DEFENDANTS/RESPONDENTS:**
     **Chevron U.S.A., Inc.**
     **Chevron U.S.A. Holdings, Inc.**

**Steven W. Usdin**
**Jamie L. Berger**
**Chloe M. Chetta**
**Barrasso, Usdin, Kupperman, Freeman & Sarver, L.L.C.**
**909 Poydras Street, Suite 2350**
**New Orleans, LA 70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **Florida Gas Transmission Company, LLC**

**Jamie D. Rhymes**
**Hunter A. Chauvin**
**Michael H. Ishee**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505-2008**
**(337) 232-7424**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **ExxonMobil Oil Corporation**

**Michael P. Cash**
**Liskow & Lewis**
**1001 Fannin Street, Suite 1800**
**Houston, TX 77002**
**(713) 651-2900**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **ExxonMobil Oil Corporation**

**Kelly B. Becker**
**Aubrey A. Denton**
**Liskow & Lewis**
**701 Poydras Street, Suite 5000**
**New Orlean, LA 70139**
**(504) 581-7979**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **ExxonMobil Oil Corporation**

**EZELL, Judge.**

Plaintiff-Applicant, Jeanerette Lumber & Shingle Company, L.L.C. (JLS), seeks supervisory writs from the judgment of the Sixteenth Judicial District Court, Parish of St. Martin, the Honorable Lewis H. Pitman, Jr., presiding, which stayed the adjudication of JLS's claims against Defendants, Florida Gas Transmission Company, LLC (FGT), ExxonMobil Oil Corporation (Exxon), Chevron U.S.A., Inc., and Chevron U.S.A. Holdings, Inc. (collectively referred to as Chevron), and compelled arbitration of all claims against FGT and Chevron. For the following reasons, we reverse the decision of the trial court and remand for further proceedings.

JLS entered into various right-of-way agreements (ROWs) with Defendants' predecessors-in-interest, establishing pipeline servitudes across portions of JLS's property located in the Buffalo Cove Water Management Unit within the Atchafalaya Basin. All of the ROWs contained two distinct damage remedy provisions. As to damage to JLS's property, the 1967 Chevron ROW provided:

> Grantee agrees to fully pay, indemnify and hold harmless the said Grantor, from, against and in connection with any and all claims or demands. . . for damages to property, including injuries and damage to Grantor, and including in both instances court costs and attorneys' fees arising from and out of the construction, maintenance, operation, relocation or removal of said pipeline, and appurtenances, or from or out of or the result of any other activities of Grantee hereunder.

Under the 1963 FGT and the 1960 Exxon ROWs, the Grantee similarly

> Agree[d] to fully indemnify and hold harmless the said Grantor, from and against any and all claims or demands . . . for damages to property, including in both instances court costs and attorneys' fees arising from and out of the construction, maintenance, operation, relocation or removal of said ditch and of said pipeline[1], or from or out of or the result of any other activities of Grantee hereunder.

---

[1] In the FGT ROW, the term "pipeline" is inserted before "ditch," and the term "appurtenances" is used rather than the phrase "of said pipeline."

In all three ROWs, an arbitration clause was included several paragraphs prior to this general indemnity provision. The FGT ROW provided:

> Grantee hereby agrees to pay any damages which may arise to growing crops, wildlife, timber, fences, or structures as the result of its operations hereunder, said damages if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by said Grantor, one by said Grantee and the third by the two so appointed as aforesaid, and the written award of such three persons shall be final and conclusive.

The Chevron and Exxon ROWs had identical arbitration provisions, except the Chevron ROW omitted the word "timber" and the Exxon ROW omitted the term "structures."

On September 27, 2018, JLS filed suit seeking recovery for erosion and property damages, citing Defendants' failure to maintain or negligent maintenance of canals and canal banks upon JLS's land outside the not-to-exceed bounds of the ROWs. The petition raised various theories of recovery, including breach of contract, negligence, nuisance, trespass, unjust enrichment, and unfair trade practices. The damages related to wildlife, the cypress-tupelo forest, soil, hydrology, ecosystem, and the land itself.

JLS specifically alleged: "Each Defendant's pipeline canals, pipelines, and spoil banks have altered the hydrological and topographical condition on Plaintiff's Property, creating an artificial water and sediment delivery system that restricts the natural flow of water and sediment on and off Plaintiff's Property." The petition further alleged: "Each Defendant's failure to maintain the canals and banks and/or negligent operation, inspection, and maintenance activities has resulted in the widening of the canals, erosion, and land loss on Plaintiff's Property." In its petition, JLS also asserted: "Each Defendant's conduct complained of herein has negatively

impacted the water quality, environment, cypress-tupelo forest, fauna and flora, sedimentation, oxygen level, and ecosystem on Plaintiff's property."

The present case was filed in tandem with four other cases because the properties are located in distinct water management units of the Atchafalaya Basin.[2] However the ROWs in all cases are substantially similar to the above provisions, the main variation being the inclusion or omission of the words "structures" or "timber" as items of arbitrable damages. Filings and transcripts in the various cases reveal that the goal of JLS in the litigation is to halt the loss of land in the cypress-tupelo swamp subject to the ROWs, the loss of which they attribute to Defendants' allegedly negligent operations, and to protect and restore the swampland.

On October 17, 2019, the trial court heard exceptions of prematurity filed by all Defendants, as well as a motion to stay and compel arbitration filed by Chevron, among others. The trial court granted FGT's and Chevron's exceptions of prematurity outright, Exxon's in part, and stayed proceedings against all Defendants. The trial court based its ruling upon a finding that "[u]nder Louisiana property law, canals are 'structures[]'" and JLS's claims were for damages to the canals themselves, as opposed to the land abutting the canals. The trial court recognized that Exxon's ROW did not include language referring to "structures;" thus JLS's claims for damages "other than to growing crops, wildlife, timber, or fences" were

---

[2] These cases are *Jeanerette Lumber & Shingle Co., LLC. v. Am. Midstream (MIDLA),* 19-273, 19-274 (La.App. 3 Cir. 6/18/19)(unpublished writ rulings), *writs denied*, 19-1168, 19-1173 (La. 10/15/19), 280 So.3d 601 (*American Midstream*); *Jeanerette Lumber & Shingle Co., LLC v. S. Natural Gas Co.*, 19-817 (La.App. 3 Cir. 3/18/20)(unpublished writ ruling)(*Southern Natural Gas*); *Jeanerette Lumber & Shingle Co., L.L.C. v. Texas Gas Transmission, L.L.C.,* No. 87262 (16th JDC St. Martin Parish)(*Texas Gas*); and *White Castle Lumber & Shingle Co., L.L.C. and Jeanerette Lumber & Shingle Co., L.L.C. v. Southern Natural Gas Co., L.L.C.*, 20-38 (La.App. 1 Cir. 5/12/20)(unpublished writ denial)(*White Castle*).

not subject to arbitration, though JLS's claims for those damages were stayed nonetheless.

JLS sought writ review of those decisions, requesting this Court to exercise its supervisory jurisdiction by granting the current writ application, vacating the stay issued by the trial court, and reversing the trial court's holding that JLS's property-damage claims against FGT and Chevron are subject to the narrowly tailored arbitration provision. We find that JLS's argument has merit.

In *Aguillard v. Auction Management Corp.*, 04-2804, 04-2857, pp. 24 (La. 6/29/05), 908 So.2d 1, 18, our supreme court recognized that Louisiana favors arbitration, and any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration:

> [W]e hold that a presumption of arbitrability does exist. Due to the strong and substantial similarities between our state arbitration provisions and the federal arbitration law as seen through a comparison of La.Rev.Stat. §§ 9:4201 and 9:4202 and 9 U.S.C. §§ 2 and 3, the federal jurisprudence provides guidance in the interpretation of our provisions. We, therefore, adopt the United States Supreme Court's interpretation of the federal arbitration law.
>
> Accordingly, even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Therefore, even if some legitimate doubt could be hypothesized, this Court, in conjunction with the Supreme Court, requires resolution of the doubt in favor of arbitration.

This court in *Abshire v. Belmont Homes, Inc.*, 04-1200, pp. 7-8 (La.App. 3 Cir. 3/2/05), 896 So.2d 277, 283, *writ denied*, 05-862 (La. 6/3/05), 903 So.2d 458 (first and third alterations in original), set forth the proper standard for reviewing a trial court's judgment sustaining an exception of prematurity based on an arbitration provision, explaining:

The dilatory exception of prematurity is provided for in La.Code Civ.P. art. 926(A)(1), and its function is to raise the issue that a judicial cause of action does not yet exist because of some unmet prerequisite condition. *Blount v. Smith Barney Shearson, Inc.*, 96-0207 (La.App. 4 Cir. 2/12/97), 695 So.2d 1001, *writs denied*, 97-0952, 97-0970 (La.5/30/97), 694 So.2d 246, 247. "It usually is utilized in cases where the law or a contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action," and "[t]he exceptor has the initial burden of showing that an administrative remedy was available, thus making the judicial action premature." *Id.* at 1003. Thus, the burden is upon [the defendant] to establish that a valid and enforceable arbitration agreement exists. *See id.* In determining whether a party is bound by an arbitration agreement, we apply ordinary contract principles, and a party cannot be required to submit to arbitration a dispute that he has not agreed to submit. *Tresch v. Kilgore*, 03-0035 (La.App. 1 Cir. 11/7/03), 868 So.2d 91. Whether a court should compel arbitration is a question of law. *Dufrene v. HBOS Mfg.*, 03-2201 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206. Therefore, "[a]ppellate review of questions of law is simply to determine whether the trial court was legally correct or incorrect." *Id.* at 1209.

Louisiana Revised Statutes 9:4202 provides:

If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

Appellate courts will not disturb a trial court's ruling on a motion to stay absent an abuse of discretion. *Interdiction of Zimmer*, 17-900 (La.App. 4 Cir. 3/14/18), 242 So.3d 669. We find that the trial court has abused its discretion in this matter.

JLS first argues that, even if the trial court had correctly interpreted the scope of the relevant arbitration provisions to include some portion of its claims against Chevron and FGT, the court still abused its discretion in staying *all* claims against *all* Defendants because "[c]ourts routinely allow non-arbitrable claims to proceed in court concurrently with arbitration proceedings." It further contends that a stay of

5

proceedings in such circumstances is only warranted when resolution of the arbitrable claims will have preclusive effect on the non-arbitrable claims, but such is not the case herein as JLS's claims against Exxon are predominantly for damage to its land and for restoration, not the arbitrable damages to crops, wildlife, timber, or fences. We agree.

"The preeminent concern of Congress in passing the [Arbitration] Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242-43 (1985). In fact, federal law "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 939 (1983) (emphasis added). "[C]ourts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation." *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004).

The arbitration clause of Exxon's ROW did not include any language referring to "structures" as did the FGT and Chevron arbitration provisions. Thus, even under the trial court's finding regarding "structures" as pertains to the FGT and Chevron claims, JLS's claims against Exxon for damages "other than to growing crops, wildlife, timber, or fences" were clearly not subject to arbitration and should be allowed to proceed in court. The trial court nevertheless stayed ***all*** proceedings against Exxon, even those for damages that were clearly not subject to its arbitration clause. We find this to be error, reverse that decision, vacate the stay, and remand for proceedings for all claims by JLS for damages "other than to growing crops, wildlife, timber, or fences" against Exxon.

Finally, JLS challenges the trial court's conclusory statement that canals are "structures" under Louisiana property law, claiming there are no provisions in our Civil Code or statutes defining canals or ditches as "structures," and canals do not fall within the generally prevailing meaning of the word "structures." Again, we agree and find that the trial court incorrectly created its own definition of the term "structures" to include the canals at issue with regard to the FGT and Chevron clauses.

> Black's Law Dictionary 1424 (6th ed. 1996) defines "structure" as:
>
> [A]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind. A combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land.

A canal as at issue here is not created by joining parts together, does not combine materials of any sort in a construction, but is simply an artificial waterway dug from the earth, with the spoil dirt piled along the edge. Prior to the trial court's ruling, neither FGT nor Chevron suggested that canals were structures. None of the cases cited by Defendants establish that canals and spoil banks are structures under Louisiana property law.[3] The inclusion of dug-out canals and the deposits of dredged soil in the definition of the term "structures" was made by the trial court sua sponte. We can find nothing in the jurisprudence which supports this finding. Accordingly, claims for damages to the canals would not fall under the definitions

---

[3] Defendants cite *Crooks v. Department of Natural Resources*, 19-160, p. 2, n.2 (La. 1/29/20), __ So.3d __, wherein the supreme court described in a footnote the various structures in and around the Catahoula Basin as including "the Jonesville Lock and Dam, Archie Weir on Little River, and the Catahoula Diversion Canal. However, this statement does not represent a legal conclusion that canals are in fact structures under our property law, as the issue of whether a canal is a structure as a matter of law was not decided or even analyzed by the court. The above dicta mentioned in passing in a footnote alone cannot support Defendants' position.

of "structures" under Louisiana law, and would not be subject to arbitration under the contracts at issue.

Further, JLS is not seeking damages for injuries *to the canals*, even if the canals were considered to be "structures." Rather, JLS seeks damages for injuries to the land surrounding the canals which was caused by Defendants' failure to maintain those canals. All of the ROWs at issue contain a general indemnity provision for property damage allowing for court costs and attorneys' fees for any and all claims or demands for damages to property arising from Defendants' operations. The ROWs' arbitration clauses exempt from the general provision any damages *to* growing crops, wildlife, timber (where included), fences, or structures (where included). Damages to the wildlife and trees clearly fall under the specific arbitrable provisions as timber and wildlife. However, the damages JLS seeks for restoration of the hydrology, sedimentology, and ecology *of the land itself* should proceed without arbitration under the general indemnity for property damage provisions of the ROWs recited above, as these damages are not *to* "growing crops," "wildlife," "timber," "fences," or "structures."

Under the clear and unambiguous provisions of the ROWs at issue, and the generally prevailing and technical meanings of the words and terms utilized therein, the claims of JLS, against FGT, Exxon, and Chevron, for damages to the cypress-tupelo forest as well as to the wildlife, all flora and fauna, fall within the parameters of the arbitration clauses of the applicable ROWs and, therefore, must be arbitrated pursuant thereto. All other claims sought by JLS for damages to the hydrology, sedimentology, and ecology of the land itself fall outside the arbitration provisions and must proceed without arbitration. Accordingly, we reverse the judgment of the

8

trial court sustaining the exceptions of prematurity filed by FGT and Chevron as to those claims.

For the above reasons, we hereby reverse the judgment of the trial court staying the non-arbitrable claims of JLS against Defendants and remand for proceedings on those claims. We further reverse the decision of the trial court sustaining the exceptions of prematurity filed by FGT and Chevron as to those claims for damages to the hydrology, sedimentology, and ecology of the land itself, and any other claims not to crops, wildlife, timber, fences, or structures, as discussed herein, as those claims fall outside the parameters of the arbitration clauses of the applicable ROWs. This matter is hereby remanded for further proceedings consistent with this ruling. Costs of this writ application are to be split by Defendants.

**REVERSED AND REMANDED.**