STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-192 consolidated with 06-1084 & 07-136


CHAD EASTERLING, ET AL.

VERSUS

ROYAL MANUFACTURED HOUSING, LLC, ET AL.


**********


APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2005-8744-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE


**********


ULYSSES GENE THIBODEAUX
CHIEF JUDGE


**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.


AFFIRMED.

**Lamont Paul Domingue**
**Voorhies & Labbe**
**P. O. Box 3527**
**Lafayette, LA 70502-3527**
**Telephone:  (337) 232-9700**
**COUNSEL FOR:**
        **Defendant/Appellant - Royal Manufactured Housing, LLC**


**Bruce David Beach**
**Ungarino & Eckert, L.L.C.**
**315 South College Road - Suite 239**
**Lafayette, LA 70503**
**Telephone:  (337) 235-5656**
**COUNSEL FOR:**
        **Defendant/Appellant - Royal Manufactured Housing, LLC**

**F. Douglas Ortego**
**Juneau Law Firm**
**P. O. Drawer 51268**
**Lafayette, LA 70505-1268**
**Telephone:  (337) 269-0052**
**COUNSEL FOR:**
     **Defendant/Appellant - Royal Manufactured Housing, LLC**

**Andrea D. Aymond**
**Riddle & Moreau, L.L.C.**
**P. O. Box 608**
**Marksville, LA 71351**
**Telephone:  (318) 253-4551**
**COUNSEL FOR:**
     **Plaintiffs/Appellees - Chad Easterling and Lisa Easterling**

**THIBODEAUX, Chief Judge.**

This case involves a challenge to an arbitration agreement between the plaintiff in a redhibition suit, Chad Easterling ("Easterling"), and the defendant who sold Easterling a manufactured home, Royal Manufactured Homes, L.L.C. ("Royal"). Following a hearing in June of 2006 on Royal's Motion to Compel Arbitration, the trial court entered a judgment denying the defendant's motion based upon confusion created by the arbitration document which tied it to a specific "contemporaneously" executed transaction that did not exist. Subsequently, Royal filed a Motion for Reconsideration that was also denied. For the following reasons, we affirm the trial court's judgment denying Royal's Motion to Compel Arbitration, and the trial court's denial of Royal's Motion for Reconsideration.

## I.

## ISSUES

We must decide whether the trial court erred as a matter of law in denying Royal's Motion to Compel Arbitration and its Motion for Reconsideration.

## II.

## FACTS AND PROCEDURAL HISTORY

On February 16, 2004, Chad Easterling signed an agreement to purchase a particular manufactured home from Royal after viewing the home on Royal's lot. The agreement provided the serial number and model name of the home, the "Brandywine" model, and provided a breakdown of the base price of the unit and the price of each piece of optional equipment, such as skirting, foundation, pole, hook-ups, etc., for a total "Cash Purchase Price" of $85,080.00. The document was also signed by Danny Richard, agent for Royal, and further provided that "[t]his agreement contains the entire understanding between you and me and no other

representation or document, verbal or written, has been made which is not contained in this contract." The agreement also provided that part of the deposit would be retained by Royal if Easterling failed to complete the purchase. However, no money changed hands that day; no deposit or down-payment was indicated; and the full balance due was shown as $85,080.00. The document further provided that if the buyer did not complete a cash transaction, he would enter into a retail installment contract with the seller. That never occurred. Easterling obtained financing elsewhere and paid cash for the home five months later in July 2004. Between February and July, Easterling's wife, Lisa, apparently made frequent calls to Royal to make sure that the home they had selected was still on the lot.

On February 23, 2004, Easterling signed a Placement and Service Agreement along with several one-page information sheets outlining the requirements for permits, installation, skirting, hook-up, debris removal, air conditioning, etc. One of the documents contained an acceptance of the "Brandywine" model as seen on the lot. The last document consisted of one page as well, and was entitled "Arbitration Agreement Addendum." The first paragraph of the agreement states as follows:

> This Arbitration Agreement ("Agreement") is executed contemporaneously with, and becomes part of, the Retail Installment of Sales Contract ("Contract") for the purchase of a manufactured home ("Home") as described in the Contract by the purchaser ("Purchaser") from the selling retailer ("Retailer"). This Agreement is for, and inures to, the benefit of the parties here, their successors and assigns, and additionally for the benefit of the manufacturer of the Home, and of the lender or mortgagee which provides the financing for the purchase of the Home, their successors and assigns, as fully as if the manufacturer and lender mortgagee were signatories hereto. The lender or mortgagee may elect at any time not to submit to binding arbitration by providing written notice to the Retailer and Purchaser at the addresses set forth in this Agreement.

The second paragraph of the document states as follows:

2

> The parties agree that all claims, disputes, and controversies arising out of or relating in any way to the sale, purchase, occupancy of the Home including, but not limited to, any negotiations between the parties, the design, construction, performance, delivery, condition, installation, financing, repair or servicing of the Home and any warranties, either express or implied, pertaining to the Home, and including claims for equitable relief or claims based on contract, tort, statue [sic], common law or any alleged breach, default, or misrepresentation, will be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules. The parties acknowledge that this Agreement evidences a transaction involving interstate commerce. Any contests to the validity or enforceability of this Agreement shall be determined by the provisions of the Federal Arbitration Act and the rules of the AAA. Copies of the rules may be obtained by writing the AAA at 13455 Noel Road, Suite 1750 Dallas, Texas 75240-6636.

On July 2, 2004, after Easterling had obtained financing from the United States Department of Agriculture, Rural Development, he signed a "Construction Contract" for delivery and set up of the home wherein Royal agreed to start work the next day, on July 3rd, and complete the installation by August 31, 2004, for one lump sum cash payment of the purchase price of $85,080.00. This set of documents also contained a Description of Materials with charts and diagrams, and a sheet explaining the U.S. Department of Agriculture's requirements for proof of immobilization, which changes the manufactured home from a "mobile" home to a permanent construction that exempts the buyer from paying sales tax on the purchase.

After the Easterling family moved into the home, it began to exhibit various defects such as water leaks and excessive condensation on the interior walls, which the Easterlings attributed to improper caulking and venting. Some of these conditions allegedly caused the growth of toxic mold and caused the air conditioner to run excessively. Apparently, repairs were attempted by Royal on behalf of the manufacturer, but the results were not satisfactory. In December of 2005, Chad and

Lisa Easterling filed a redhibition suit alleging latent and hidden defects in the home at the time of manufacture by Indies House, and also alleging deficiencies in the set up of the home by Royal. Additionally, the Easterlings alleged personal injuries to the family members due to their exposure to the toxic mold.

Royal filed a Motion to Compel Arbitration based upon the Arbitration Agreement Addendum signed by Chad Easterling on February 23, 2004. The Easterlings opposed the motion arguing that they obtained financing for the home through Rural Development, not Royal, and that no "Retail Installment of Sales Contract" was ever executed, as referenced in Royal's arbitration agreement. They further pointed out that they did not execute the purchase from Royal until July 2, 2004, at which time they signed a "Construction Contract" and paid Royal one lump sum of $85,080.00 for the home.

The trial court subsequently denied the motion and issued written reasons explaining that the arbitration agreement would have applied to a "Retail Installment of Sales Contract" if Royal had financed the home for the Easterlings and if the parties had executed the referenced installment contract. However, the court would not apply the arbitration agreement to a lump sum purchase document, called a "Construction Contract," that was executed five months after the arbitration agreement. Nor did the court apply the arbitration agreement to the agreement to purchase that Easterling signed one week before signing the arbitration agreement, as neither the agreement to purchase nor the Construction Contract evidencing the sale were reflected in the arbitration agreement or executed "contemporaneously" with the agreement as purported in the agreement.

Based upon the trial court's denial of its Motion to Compel Arbitration, Royal filed a writ application, numbered 06-1084, and also filed an appeal. We

granted the writ for the sole purpose of consolidating it with this appeal. Royal also filed a Motion for Reconsideration of the arbitration issue with the trial court, which was also denied for the same reasons as previously stated by the trial court. Again, Royal filed a writ application with this court, number 07-136, and that writ application has been consolidated as well with the instant appeal.

III.

## LAW AND DISCUSSION

### Standard of Review

Whether a court should compel arbitration is a question of law, and our appellate review of a question of law is simply to determine whether the trial court was legally correct or incorrect. *Rico v. Cappaert Manufactured Housing, Inc.,* 05-141 (La.App. 3 Cir. 6/1/05), 903 So.2d 1284.

Royal contends that the trial court erred as a matter of law in denying its Motion to Compel Arbitration and its Motion for Reconsideration where the court failed to first apply the Federal Arbitration Act at 9 U.S.C. § 1, et seq, which favors arbitration and preempts state law. We disagree that the trial court erred in failing to analyze the question of federal preemption.

As this court has recognized in *Abshire v. Belmont Homes, Inc.*, 04-1200 (La.App. 3 Cir. 3/2/05), 896 So.2d 277, *writ denied,* 05-862 (La. 6/3/05), 903 So.2d 458, and in *Rico v. Cappaert Manufactured Housing, Inc.*, 903 So.2d 1284, the issue of federal preemption, or application of the Federal Arbitration Act at 9 U.S.C. 1, et seq, as apposed to the Louisiana Binding Arbitration Law at La.R.S. 9:4201, et seq, is of little consequence. Pursuant to the Louisiana Supreme Court decision in *International River Center v. Johns-Manville Sales Corp.*, 02-3060, p. 6 (La. 12/3/03), 861 So.2d 139, 143, the Federal Arbitration Act is "a collection of statutes

5

which is very similar to the Louisiana Binding Arbitration Law." *See also Dufrene v. HBOS Manufacturing, LP*, 03-2201, p. 3 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1210, wherein the fourth circuit stated that the federal and state acts are "virtually identical."

More specifically, Louisiana's arbitration law provides as follows:

La.R.S. 9:4201. Validity of arbitration agreements

A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

La.R.S. 9:4202. Stay of proceedings brought in violation of arbitration agreement

If any suit or proceedings be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration.

Similar to La.R.S. 9:4201, above, the FAA provides at 9 U.S.C. § 2:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Similar to La.R.S. 9:4202, the FAA at 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Quoting the Louisiana and federal statutes above, the Louisiana Supreme Court in *Aguillard v. Auction Management Corp.*, 04-2804, 04-2857 (La. 6/29/05), 908 So.2d 1, stated that the positive law of Louisiana favors arbitration, and that this favorable treatment echos the Federal Arbitration Act ("FAA") at 9 U.S.C. § 1, et seq. The Court made it clear that due to the similarity of the foregoing statutes, it would adopt the liberal federal policy favoring arbitration agreements. The Court in *Aguillard* further resolved the split between our circuit courts, stating that it would adopt the liberal interpretation policy of the Second and Fourth Circuits[1], as opposed to the conservative policies of the First and Third Circuits[2] at that time. Accordingly, a presumption of arbitrability now exists with regard to the enforceability of arbitration agreements under a contract of adhesion analysis. While the events giving rise to this suit arose prior to our Supreme Court's official adoption of the liberal interpretation of arbitration agreements, the Louisiana statutes already were in place.

---

[1]*See, Stadtlander v. Ryan's Family Steakhouses*, 34,384 (La.App. 2 Cir. 4/4/01), 794 So.2d 881, *writ denied*, 01-1327 (La. 6/22/01), 794 So.2d 790; *Simpson v. Pep Boys-Manny Moe & Jack, Inc.*, 03-358 (La.App. 4 Cir. 4/10/03), 847 So.2d 617; *Dufrene v. HBOS Manufacturing, LP*, 03-2201 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, *ruling on rehearing*, 03-2201 (La.App. 4 Cir. 5/28/04), 872 So.2d at 1212.

[2]*Aguillard* therefore abrogated the First and Third Circuit cases of *Posadas v. The Pool Depot, Inc.,* 02-1819 (La.App. 1 Cir. 6/27/03), 858 So.2d 611, *writ denied*, 03-2125 (La. 11/7/03), 857 So.2d 502, *Sutton's Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 00-511 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, *writ denied*, 01-0152 (La. 3/16/01), 787 So.2d 316, *Simpson v. Grimes*, 02-869 (La.App. 3 Cir. 5/21/03), 849 So.2d 740, *writ denied*, 03-2497 (La. 12/19/03), 861 So.2d 567, and *Vishal Hospitality, L.L.C. v. Choice Hotels International, Inc.*, 04-568 (La.App. 1 Cir. 3/24/05), 907 So.2d 80, *writ granted, cause remanded*, 05-1058 (La. 1/9/06), 918 So.2d 1020.

Therefore, federal preemption is not a real issue in this case, as the law of Louisiana does not conflict with the federal statutes. However, the arbitration agreement in this case specifically states that it is governed by the FAA. While the trial court did not cite the state or federal statutes in its analysis, it did not violate the FAA, which provides at 9 U.S.C. § 2 that the court may invalidate an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract" as more fully explained below.

Royal asserts that the trial court's rulings were directly contrary to our Louisiana Supreme Court's ruling in *Aguillard* and in the United States Supreme Court's opinion in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204 (2006). Again we disagree. *Buckeye*, which was the basis for Royal's request for reconsideration, involved a lawsuit brought by borrowers alleging that a lender made illegal usurious loans disguised as check cashing transactions. The lender's motion to compel arbitration, based upon a deposit and disclosure agreement signed by the borrowers, was denied. The Florida Supreme Court ruled that the borrower's claims that an *underlying* contract was illegal and void had to be resolved by the trial court before arbitration of other disputes could be compelled. The United States Supreme Court reversed and remanded, holding that regardless of whether it is brought in federal or state court, a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court.

This is true because the arbitration provision is severable from the remainder of the contract, and "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 126 S.Ct. at 1206. Accordingly, this case falls into the "unless" category;

that is, Easterling's challenge is to the arbitration agreement itself, not to the underlying sales contract. This is not a breach of contract case for non-delivery or delivery of the wrong model, but rather is a suit for redhibitory defects under La.Civ.Code art. 2520, which involves a breach of implied warranty against defects, but which is distinguishable from challenges to an underlying contract.

The courts in Louisiana have held unequivocally that actions based on a breach of warranty against defects are to be brought in redhibition instead of as a breach of contract. *PPG Industries, Inc. v. Industrial Laminates Corp.*, 664 F.2d 1332 (U.S.C.A. 5th Cir. 1982); *Molbert Bros. Poultry & Egg Co. v. Montgomery*, 261 So.2d 311 (La.App. 3 Cir.), *application not considered*, 263 So.2d 46 (La.1972). Even if the warranty in a contract of sale is express rather than implied, the presence of the express warranty in the sale does not convert the action for redhibition into an action for breach of contract.[3] *See PPG Industries, Inc.*, 664 F.2d 1332, and Comment (b) under La.Civ.Code art. 2520. Unlike damages for other contractual breaches, damages caused by a breach of the warranty in a contract of sale are regarded as founded upon redhibition and subject to the prescription applicable to redhibitory actions. *Molbert Bros. Poultry & Egg Co.*, 261 So.2d 311.

Accordingly, the challenge in this case is not to the underlying sales contract, but to the arbitration agreement alone. The United States Supreme Court in *Buckeye* made it very clear that the arbitration agreement is severable, and when challenged, a court can decide whether it is enforceable. More specifically, the Court quoted the language from the Federal Arbitration Act at 9 U.S.C. §§ 2 and stated as follows:

---

[3]We are not holding that all arbitration agreements are invalid if the underlying suit is one in redhibition rather than one for breach of contract. We acknowledge that the arbitration agreement in this case attempted to apply itself to a breach of implied warranty cause of action. However, the arbitration agreement in this case was fatally flawed at the outset *before* it discussed the types of disputes to which it would apply or the specific law that would control it.

> Challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. See, *e.g., Southland Corp. v. Keating*, 465 U.S. 1, 4-5, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (challenging the agreement to arbitrate as void under California law insofar as it purported to cover claims brought under the state Franchise Investment Law). The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. Respondents' claim is of this second type. The crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge.

*Buckeye*, 126 S.Ct. at 1208 (footnote omitted).

The Court in *Buckeye* concluded that "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." *Id.* at 1209. The opposite occurred in the present case, where the arbitration agreement itself, not the underlying contract, was at issue. We believe that under *Buckeye*, the trial court properly severed the arbitration agreement and found that it, standing alone, created confusion and ambiguity by tying itself to a document and a transaction that did not exist. Therefore, the trial court's judgment was not contrary to the holding in *Buckeye.*

Likewise, we find no merit in Royal's assertion that the trial court's judgment is contrary to our Supreme Court's holding in *Aguillard.* There, the plaintiff had presented the highest bid on real property at an auction, thereby purchasing a residential dwelling. When the seller refused to accept the offer, the plaintiff brought a breach of contract action against the vendor bank, its servicer, and the auctioneers seeking to enforce the auction real estate sales agreement which

10

contained an arbitration clause. The trial court denied the defendants' motion to stay the proceedings pending arbitration, and the defendants applied for supervisory writs. A panel of this court affirmed, finding that the entire contract between the parties, including the arbitration clause, was adhesionary and lacked mutuality. Certiorari was granted by the Louisiana Supreme Court, and we were reversed.

The Louisiana Supreme Court discussed the general definition of a contract of adhesion as a standard contract prepared by a party of superior bargaining power, often in small print, and often raising the question of whether or not the weaker party actually consented to the terms. The Court rejected the idea that all standard form contracts are adhesionary and determined in the *Aguillard* case that neither the print nor the font size in the arbitration clause was smaller or different from the other clauses; that the contract was only a two-page document with each paragraph separated by double spacing; that the arbitration clause was not concealed in any way; and that the contract did not lack mutuality. The Supreme Court then articulated that, "unquestionably a written arbitration agreement does exist, and because the issue in this case arises from and is related to the Auction Terms & Conditions and its breach, the issue is referable to arbitration." *Aguillard*, 908 So.2d at 18.

Conversely, in the present case, we do not have allegations of an adhesionary contract, which was the specific analysis involved in *Aguillard*. In fact, Royal admits that Easterling did not allege adhesion. We note that Easterling did question the validity of a consent given in the arbitration agreement itself when the referenced transaction and document, a retail installment contract, never existed. However, there were no allegations regarding small print, hidden agreements, and unequal bargaining power. We do also note that while a lack of mutuality was not

alleged, or discussed by the trial court, the arbitration agreement in this case, unlike the one in *Aguillard*, did state that "[t]he lender or mortgagee may elect at any time not to submit to binding arbitration by providing written notice to the Retailer and Purchaser at the addresses set forth in this Agreement." Accordingly, under an adhesion analysis, there would appear to be a question of mutuality, even if the arbitration agreement had properly incorporated by reference the cash sale of the home, which it did not do.

Notwithstanding, before the reader gets anywhere near the foregoing language at the end of the first paragraph, the first sentence of the agreement creates confusion that renders the arbitration agreement unenforceable. It states that the arbitration agreement is being executed "contemporaneously with, and becomes part of, the Retail Installment of Sales Contract," which is a document and a transaction that did not then or thereafter exist.

After the Supreme Court in *Aguillard* compared the state and federal statutes and discussed the congressional intention of legislating in favor of arbitration, it made it clear that even though the FAA would preempt any conflicting state law:

> [T]he states do retain the ability to regulate contracts involving arbitration agreements and may do so under general contract law as is referenced in the final section of 9 U.S.C. § 2. Thus, states may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract."

*Aguillard*, 908 So.2d at 8 (citations omitted).

We believe that is exactly what the trial court did in this case. The court severed the arbitration agreement, pursuant to *Buckeye*, independent of the underlying sale, invalidated the arbitration agreement for the confusion that it created regarding the non-existent installment contract, and interpreted it against the drafters. *See*

12

La.Civ.Code art. 2056.[4] We disagree with Royal's assertion that the trial court "took a peek" at the underlying contract and made a decision on contract formation. The underlying contract was not at issue. The trial court merely found that the arbitration agreement signed in February, almost five months before the purchase of the home in July, stated that it was being executed "contemporaneously" with a "Retail Installment of Sales Contract." The arbitration agreement, therefore, indicated that it would apply to an installment contract with Royal, a document that never existed, and a transaction that never took place.

Royal asserts that the "exact same language" in the instant Arbitration Agreement Addendum "was held to be clear, understandable, and non-adhesionary in *Dufrene v. HBOS Manufacturing, LP*, 03-2201 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, *ruling on rehearing*, 03-2201 (La.App. 4 Cir. 5/28/04), 872 So.2d at 1212." Again, we disagree. While it is true that the Supreme Court in *Aguillard* spoke approvingly of *Dufrene* and the Fourth Circuit's liberal approach to analyzing arbitration agreements, the Arbitration Agreement in *Dufrene* did not contain the "exact same language." Rather, the first sentence in the Arbitration Agreement Addendum in *Dufrene* stated as follows:

> This Arbitration Agreement ("Agreement") is executed contemporaneously with, and becomes part of the Retail Installment **or** Sales Contract ("Contract") for the purchase of a manufactured home ("Home") as described in the Contract by the purchaser ("Purchaser") from the selling retailer ("Retailer").

*Dufrene,* 872 So.2d at 1209 (emphasis added).

---

[4]La.Civ.Code art. 2056. Standard-form contracts: "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."

The insertion of the word "or" above indicates that the arbitration agreement addendum in *Dufrene* was clearly intended to apply to a retail installment contract *or* a sales contract, unlike the instant agreement which referenced one specific document, a non-existent "Retail Installment **of** Sales Contract." Moreover, the court in *Dufrene* referenced an underlying arbitration agreement, such that the "addendum" was actually an addendum to an existing arbitration agreement. In the present case, the Arbitration Agreement Addendum was not what it purported to be. It was not an addendum at all, but rather stood alone; and, rather than being characterized as clear and understandable, it was ill-conceived, and it created confusion and ambiguity, as it attempted to incorporate by reference a document and a transaction that did not exist at any time between Royal and Easterling.

We acknowledge the presumption of arbitrability in the state and federal statutes. However, we do not believe that Congress or our state Legislature intended to find all arbitration agreements enforceable simply because they are written agreements, which appears to be Royal's argument. That is, if there is a written arbitration agreement, no matter what it says, the case must go to an arbitrator. That is not what the law says. Rather, an accurate summary would state that (1) if there is a *valid* arbitration agreement, then (2) whether the particular complaints are referable to arbitration should be determined by the arbitrator. In the present case, the trial court first determined that there was no valid arbitration agreement, and that ended the issue of arbitration. While the trial court did not cite the state or federal statutes on arbitration, it did invalidate the agreement "upon such grounds as exist at law or in equity for the revocation of any contract," pursuant to 9 U.S.C. § 2 and La.R.S. 9:4201.

14

IV.

**<u>CONCLUSION</u>**

Based upon the foregoing, the trial court's denial of the Motion to Compel Arbitration, and the Motion for Reconsideration, are hereby affirmed. Costs of this appeal are assessed against the defendant, Royal Manufactured Housing, LLC.

**AFFIRMED.**