STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-1574 consolidated with 07-831


SHAUN COLEMAN

VERSUS

JIM WALTER HOMES, INC.

**************
APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, DOCKET NO. 79,304-B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**************
ON REMAND FROM THE
SUPREME COURT
DOCKET NO. 07-C-1956


**************
**SYLVIA R. COOKS**
**JUDGE**
**************


Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Michael G. Sullivan, Judges.

**AFFIRMED.**


**C.R. Whitehead, Jr.**
**Whitehead Law Offices**
**725 Third Street**
**P.O. Box 697**
**Natchitoches, LA 71458-0697**
**(318) 352-6481**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 Shaun Coleman

**Brent E. Kinchen**
**Eric M Barrilleaux**
**Seale, Smith, Zuber & Barnette**
**Two United Plaza, Suite 200**
**8550 United Plaza Blvd.**
**Baton Rouge, LA  70809**
**(225) 924-1600**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Jim Walter Homes, Inc.**
    **Farm Bureau Mutual Insurance Company of Michigan**

**COOKS, Judge.**

## STATEMENT OF THE FACTS

This case represents another in the long line of cases involving an arbitration agreement in a contract for the purchase of a mobile/manufactured home. This court has consistently refused to enforce an arbitration agreement, stripping the unsuspecting buyer of his right of access to the courts for redress of a grievance. *See Rodriguez v. Ed's Mobile Homes of Bossier City, Louisiana*, 04-1082 (La.App. 3 Cir. 12/8/04), 889 So.2d 461, *writ denied*, 05-83 (La. 3/18/05), 896 So.2d 1010; *Abshire v. Belmont Homes, Inc.*, 04-1200 (La.App. 3 Cir. 3/2/05), 896 So.2d 277, *writ denied,* 05-862 (La. 6/3/05), 903 So.2d 458; *St. Romain v. Cappaert Manufactured Housing*, 05-140 (La.App. 3 Cir. 6/1/05), 903 So.2d 1186; *Quebedeaux v. Sunshine Homes, Inc.*, 06-349 (La.App. 3 Cir. 10/11/06), 941 So.2d 162 *writ denied*, 06-2698 (La. 1/8/07), 948 So.2d 131 and 06-2772 (La. 1/8/07), 948 So.2d 134; *Easterling v. Royal Manufactured Housing, LLC,* 07-192 (La.App. 3 Cir. 6/6/07), 963 So.2d 399. In all of the above cited cases the parties had agreed upon the terms of the sale prior to closing. The arbitration agreement was placed unilaterally by the seller in the final contract of sale and was never consented to or even discussed with the buyer in the meetings prior to closing. Moreover, the inclusion of the arbitration agreement was a non-negotiable term and the refusal of the buyer to submit to arbitration would terminate the process, regardless of the months of preparation and expenditure of money incurred by the buyer. The facts in the present case are as follows.

Sometime near the end of 2004, Shaun Coleman and his wife, Lisa, decided to explore the possibility of building their own residential home in Natchitoches Parish. Shaun, age 29, works in Texas in oil field production and Lisa is employed at a bank. The Colemans contacted Jim Walter Homes, Inc. (JWH) in order to select a suitable

1

home design. Jim Walter Homes, Inc. is a subsidiary of Walter Industries, a leading on-your-lot manufactured home builder with over seventy locations throughout the southwest. JWH provides mortgage financing for about 89% of the homes they build. The nearest JWH to the Colemans was located in Shreveport. The Colemans made several trips to the Shreveport office to obtain information concerning the price and specifications of their preferred home design. Robert Fry, a salesman for JWH assisted the Colemans in selecting a home and negotiating the terms of the sale including financing through JWH. The Colemans selected the "Sonoma" home design at a cost of $259,592.40. Financing for the home was obtained through JWH at an interest rate of 8.9%. A closing date of December 16, 2004 was set for the signing of the contract, mortgage and promissory note. During the several weeks of discussion prior to closing, Mr. Fry did not mention that the JWH contract of sale contained arbitration agreement. Further, the Colemans were not supplied with any of the closing documents before December 16, 2004 and they did not have the benefit of legal counsel during any of the negotiations with JWH. On the date of closing, Shaun traveled alone to Shreveport on his way to his job in Texas to execute the final documents for the construction of the home. Mr. Fry presented the documents to Shaun and required his initials and signature on the contract. The first document Shaun signed was the building contract. The contract listed the price, interest due and a description of the home. Paragraph 4 of the agreement provided in all caps:

> IN CONNECTION WITH THE FOREGOING, BUYER ACKNOWLEDGES HAVING READ, UNDERSTOOD AND ACCEPTED THE ARBITRATION AGREEMENT SET FORTH IN EXHIBIT "D" ATTACHED HERETO AND INCORPORATED BY THIS REFERENCE.

Exhibit "D" was a two and one-half page document entitled "Arbitration Agreement" which provided, in relevant part:

The parties agree that any controversy (whether asserted as an original claim, counterclaim, cross claim, or otherwise) arising out of or related to this Agreement, or the breach thereof, or any negotiations leading up to the making of this Agreement, or any extensions of credit related to this Agreement, or the House that is the subject of this Agreement, or any insurance sold under or in connection with this Agreement, or any relationship resulting from any of the foregoing, whether asserted in tort, contract or warranty, or as a federal or state statutory claim, and whether arising before, during or after performance of this Agreement, shall be settled under this Arbitration Agreement in accordance with the procedures specified below.

The agreement carved out exceptions to the arbitration requirement under certain circumstances in favor of JWH. The document provided, in relevant part:

Further, notwithstanding the foregoing, Seller and its assigns retain the option to use judicial or non-judicial relief to seek such remedies as (i) foreclosure and ejectment granted to Seller or its successors and assigns in the mortgage or under applicable law, (ii) suits to establish or quiet title to any property covered by the mortgage, and (iii) suits to establish or enforce equitable liens.

Shaun initialed and signed the documents but testified he did not know what arbitration was and it was never explained to him that he was giving up access to the courts to resolve any dispute with JWH. At the hearing, Mr. Fry testified that the inclusion of an arbitration clause was a mandatory provision in a JWH contract and was not a negotiable term. Mr. Fry stated emphatically that had the Colemans refused to agree to arbitration, the sale would not have proceeded. At the hearing, the following exchange occurred between Mr. Fry and counsel for the Colemans:

Q. If he had refused to initial the arbitration agreement would the deal have gone south?

A. It would have stopped the process.

Q. Okay. Did you tell Mr. Coleman that he had an option; that he did not have to agree that it was an option, an option with him to sign or not to sign the agreement?

A. No I did not.
. . . .
A. I didn't advise him of the right that he didn't have to sign it.
. . . .

3

A. No, if that had come up and he had said I'm not comfortable signing or there was an issue I at that point would have stopped the process and I would have had to contact my manager or divisional person. Yeah.

. . . .

A. I explained when we covered arbitration that arbitration is a process most builders in Louisiana use and independent counsel is appointed that doesn't necessarily represent, doesn't represent the buyer or the seller if an issue should come up. It's something that protects him not only as us and reduces the, would reduce the cost of that type of procedure.

Q. And that he waived his right to a jury trial?

A. I don't think we covered it that particularly. We went through a general explanation. I told him any, please read any and all documents. If he, you know if there's a question that comes up.

. . . .

Q. There was no mention of arbitration during these contract negotiations that were lead up to the preparation of the final papers?

A. No sir we did not discuss arbitration at that point.

Q. So it more or less was a kind of take it or leave it deal?

A. Are you talking about in the closing process?

Q. Yes sir.

A. Uh, we go over the procedure and if they would have any question or not want to sign or not feel comfortable signing it would stop the process. And I don't know at that point it's never come up. I would have to refer to a manager or someone above myself.

Mr. Fry testified that the arbitration clause was not discussed with the Colemans during any pre-closing meetings and there was no consideration or reduction in the price for signing the arbitration agreement.

On December 16, 2004, Shaun signed the contract of sale, the mortgage and promissory note in favor of JWH. Before their home was completed, serious construction problems were detected. The Colemans sued JWH alleging the materials used to construct the home were unfit for their intended purpose due to exposure to the elements, the floor coverings installed by the plaintiff were damaged due to a defect in the water piping system, and the home had become infested with mold due

4

to its poor construction. JWH filed a dilatory exception of prematurity and motions to compel arbitration and stay proceedings. The trial court denied the exception and motions and this appeal follows. For the reasons assigned below, we affirm the judgment of the trial court.

## LAW AND DISCUSSION

Jim Walters Homes filed a dilatory exception of prematurity. The party filing the dilatory exception of prematurity, based on the existence of an agreement to arbitrate, has the burden of establishing that a valid and enforceable arbitration agreement exists. *See Abshire*, 896 So.2d 277. In determining whether a party is bound by an arbitration agreement, a court applies ordinary principles of contract. *Id.* One of the conditions of a valid contract is consent of both parties. La.Civ.Code art. 1927. Consent may be vitiated by error. La.Civ.Code art. 1948. "Error can 'invalidate a contract if it is related to the principle cause, or motive, for making the agreement' and is 'known or should have been known to the other party.'" *Rodriguez*, 889 So.2d at 464 (footnotes omitted). Cause is the reason why a party obligates himself. La.Civ.Code art. 1967. In the present case, the Colemans spent weeks negotiating the price, specifications and completion of their home with Mr. Fry from JWH. In none of these meetings did Mr. Fry mention that an arbitration agreement would be a non-negotiable condition of the sale. Mr. Fry testified if Shaun at the time of signing would have not agreed to arbitrate any dispute arising between the parties, the process would have stopped.

This court has already addressed a similar factual scenario in *Rodriguez,* 889 So.2d 461. In *Rodriguez,* the plaintiffs executed a purchase agreement for a mobile home which agreement did not contain an arbitration clause. However, the final contract of sale contained an arbitration clause. When presented with the arbitration

5

agreement for the first time at closing, the Rodriguezes signed "because they thought they '*had to*' in order to get delivery of their mobile home." *Id.* at 464. The trial court denied the defendant's exception of prematurity and this court affirmed finding "[t]he parties had already agreed upon the terms of contract of sale before closing, and binding arbitration was not one of them. . . . A party cannot, unilaterally, assign additional consideration for the perfection of a sale." *Id.* at 464. "The latter was presented to them, for the first time, at closing; they signed it because they thought they '*had to*' in order to get delivery of their mobile home." *Id.*

Additionally, *Abshire,* 896 So.2d 277 involved a suit against the seller, manufacturer and insurer for negligent installation, construction and breach of contract. The manufacturer filed an exception of prematurity. This court relied on *Rodriguez* and held "although the plaintiffs signed the arbitration agreement at the same time they signed the purchase agreement, there is no evidence that the arbitration agreement was part of the consideration of the original purchase agreement." *Id.* at 285.

In *St. Romain,* 903 So.2d 1186, this court found an arbitration clause unenforceable because "there is no evidence in the instant case that the arbitration agreement at issue formed part of the consideration for the original purchase agreement, nor could Cappaert unilaterally assign additional consideration for the perfection of the sale." *Id.* at 1191. *See also Quebedeaux,* 941 So.2d 162 in which this court held the purchasers' consent to arbitration was vitiated by error and *Easterling v. Royal Manufactured Housing, LLC,* 07-192 (La.App. 3 Cir. 6/6/07), 963 So.2d 399, which this court again affirmed the trial court's denial of the seller's motion to compel arbitration.

In the present case, we find the Colemans were unaware that relinquishing their

right of access to the courts was a condition of the sale when they were negotiating the terms of the contract with JWH. There was no mention of an arbitration clause during any of the discussions with Mr. Fry. JWH unilaterally added the arbitration clause to the final contract of sale. Had the Colemans refused to sign the document, the process would have stopped. We find the Colemans' consent to arbitration was vitiated by error. The parties agreed on the terms of the sale before the closing. Unilateral insertion of the arbitration clause by JWH was not part of the original bargain the parties consented to perfect. Accordingly, we affirm the decision of the trial court denying JWH's exception of prematurity and the motions to stay proceedings and compel arbitration.

## DECREE

Based on the foregoing review of the record, we affirm the judgment of the trial court. All costs of this appeal are assessed against Jim Walter Homes, Inc.

**AFFIRMED.**