NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

08-809

JACOB FLOYD, ET AL.

VERSUS

PALM HARBOR HOMES, INC., ET AL.

**********
APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 69294-B
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE
**********

CHRIS J. ROY, SR.[1]
JUDGE

**********

Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Chris J. Roy, Sr., Judges.

AFFIRMED.

Jonathan Clyde Vidrine
West & Vidrine
P. O. Drawer 1019
Ville Platte, LA 70586
(337) 363-2772
Counsel for Plaintiffs/Appellees:
    Jacob Floyd
    Courtney Floyd


Lee H. Ayres
Ayres, Warren, Shelton
Post Office Box 1764
Shreveport, LA 71166-1764
(318) 227-3500

---

[1]Judge Chris J. Roy, Sr. appointed judge pro tempore of the Court of Appeal, Third Circuit.

**Counsel for Defendants/Appellants:**
    **Palm Harbor Homes, Inc.**
    **Palm Harbor Manufacturing, L.P.**

**Roy, Judge (pro tempore).**

The defendants, Palm Harbor Homes, Inc. and Palm Harbor Manufacturing, L.P. (Palm Harbor), appeal the trial court's denial of their Exception of Prematurity and Petition to Compel Arbitration. Palm Harbor seeks to examine an arbitration provision executed by plaintiffs, Jacob and Courtney Floyd, under federal law, so that only the validity of the arbitration provision itself is considered here. Such an examination, Palm Harbor argues, requires this action to be referred to arbitration at this point and for this lawsuit to be stayed pending arbitration. However, Palm Harbor fails to consider whether the contract meets the requirements of a sale under Louisiana law. For the following reasons, we affirm the trial court's denial of the exception and petition.

## PROCEDURAL AND FACTUAL BACKGROUND

In April 2007, the Floyds traveled to Vidor, Texas to shop for and purchase a mobile home to be delivered to their property in Chataignier, Louisiana. After close inspection of a particular peach home with white trim at the Palm Harbor yard, the Floyds decided to purchase that home. The Floyds noted "no blemishes or anything that [they] couldn't . . . deal with . . . the small things that were wrong [they] could deal with." Palm Harbor placed a "sold" sign on that home, wrote the Floyds' names on a wall chart next to the entry for that particular home, and told the Floyds no one would even enter that home until it was delivered to them. That was the home the Floyds wanted and agreed to purchase.

The Floyds signed the necessary paperwork to purchase the mobile home in May 2007 at an attorney's office in Ville Platte, Louisiana. In June 2007, Jacob signed an agreement to arbitrate "any and all controversies or claims arising out of, or in any way relating to, the Retail Installment Contract or Cash Sale Contract or the

1

negotiation, purchasing, financing, installation, ownership, occupancy, habitation, manufacture, warranties (express or implied), repair or sale/disposition *of the home which is the subject of the Retail Installment Contract or Cash Sale Contract*" according to the rules and procedures of the American Arbitration Association and "applicable state law." (Emphasis added). Palm Harbor would not deliver the home unless or until the papers were signed.

Once the paperwork was complete, Palm Harbor delivered a blue mobile home with white trim from Lafayette, Louisiana, not the peach mobile home with white trim from Vidor, Texas. The delivered home included a number of flaws, totally different colors, and several fixtures very different from those in the home the Floyds had selected.

To date, the Floyds have refused to accept the home Palm Harbor delivered to them and placed on their property, and they have never moved into it. Because of their financing agreement, however, they have made monthly payments on it, and apparently continue to do so. Although Palm Harbor offered to replace the delivered home with another one, it apparently was unable to deliver the particular home the Floyds selected and agreed to purchase.

The record of this matter indicates Palm Harbor inserted the serial number of the home it actually delivered in the sales contract prepared either by them or on their behalf, even though the home delivered was not the home Palm Harbor knew the Floyds had selected and intended to purchase.[2] The papers were signed in Ville Platte approximately a month after the Floyds selected their home in Vidor, and no home had yet been delivered at the time the papers were signed. Thus, the Floyds had no way to determine whether the serial number Palm Harbor used in the contract was the

---

[2]The sales contract itself does not appear in the record of this matter.

same as the serial number of the home they intended to purchase. Of course, as we now know, it was not.

The Floyds filed suit alleging, *inter alia*, fraud under La.Civ.Code art. 1953, claiming that Palm Harbor fraudulently planned to sell and deliver a home it knew the Floyds did not agree to purchase. Palm Harbor filed a Dilatory Exception of Prematurity and a Petition to Compel Arbitration. The trial court denied both motions. Palm Harbor thereafter applied for a supervisory writ with this court; that application was denied because the trial court's judgment was properly appealable. *See Floyd v. Palm Harbor Homes, Inc.*, an unpublished writ bearing docket number 08-439 (La.App. 3 Cir. 6/5/08). Thus, this court treated the application for supervisory writ as a timely filed motion and order for appeal. Palm Harbor assigns as error the trial court's failure to grant its Dilatory Exception of Prematurity and Petition to Compel Arbitration and the trial court's failure to stay further proceedings in this action in favor of arbitration.

## DISCUSSION

We review questions of law de novo. *Louisiana Municipal Association v. State*, 04-227 (La.1/19/05), 893 So.2d 809. The trial court found no valid underlying contract existed, and thus, held the arbitration agreement does not apply. We agree with the trial court's result. We take care not to address, comment on, or imply anything pertaining or related to the merits of the allegations of fraud made by the Floyds, a matter yet to be considered by the trial court.

Palm Harbor's argument that the issue of arbitrability itself must be decided under federal law relies greatly on *Williams v. Litton*, 03-805 (La.App. 3 Cir. 12/23/03), 865 So.2d 838. *Williams* dealt with the arbitrability of controversies arising out of the underlying contract and discussed whether the federal law of

3

arbitration applied to determine the issue of fraud in the inducement of the underlying contract. We need not address the issue of fraud in the inducement of the contract here, however, because the underlying contract fails on other grounds. Thus, *Williams* is distinguishable from this case.

A contract of sale requires an object, a price, and the consent of the parties. La.Civ.Code art. 2439. Such a contract is governed by the law of conventional obligations when no particular provision is made for a contract of sale. La.Civ.Code art. 2438. Under the law of conventional obligations, error vitiates consent "when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La.Civ.Code art. 1949.

Here, the parties were never in agreement as to the object of the sale. The Floyds intended to and contracted to purchase the peach mobile home from Vidor. Palm Harbor intended and contracted to sell the Floyds the blue mobile home from Lafayette. We find the Floyds would never have incurred an obligation under the purported contract of sale and would never have agreed to the arbitration provision, had they known the object of the sale was the blue home and not the peach one. Further, we find Palm Harbor knew the Floyds expected the cause of their obligation to be the peach home and not the blue one. Thus, two of the required elements of a contract of sale are absent here.

This case does not involve any alleged breach or invalidity of any particular term or provision of the underlying contract. It does not involve a claim or controversy arising out of the contract or a dispute relating to "the home which is the subject of" the underlying contract. Those are the types of disputes contemplated by the arbitration provision. Rather, this case involves the alleged fraudulent actions of

4

Palm Harbor outside the contract—actions that nullified the terms and conditions of Palm Harbor's agreement with the Floyds. We therefore decline to apply an arbitration provision where the parties did not agree as to the object of the sale and where Palm Harbor knew the Floyds would not have been willing to incur an obligation for the blue mobile home delivered to them.

The underlying purported contract is invalid. Thus, an agreement to arbitrate disputes arising out of the purported contract is likewise invalid. *Easterling v. Royal Manufactured Housing, LLC*, 07-192 (La.App. 3 Cir. 6/6/07), 963 So.2d 399. It is not necessary to address whether federal or state law determines the arbitrability of the contract, or whether arbitration should determine whether there was fraud in the inducement of the contract, as Palm Harbor wants us to do, where no contract ever existed in the first place.

No contract of sale is involved here. Whether fraud is involved is an issue for the trial court to determine on the merits of this case.

## CONCLUSION

An agreement to arbitrate disputes arising out of a contract or the object of the contract cannot be enforced where the underlying contract is invalid according to Louisiana law because it lacks the required elements of a sale and because of a vice of consent. *Easterling*, 963 So.2d 399. There is simply nothing to arbitrate in this case. Therefore, the trial court correctly denied Palm Harbor's Exception of Prematurity and Petition to Compel Arbitration and correctly declined to stay these proceedings in favor of arbitration. Accordingly, we affirm the decision of the trial court.

**AFFIRMED.**

5