# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-285

**JASON VIDRINE, ET UX.**

**VERSUS**

**J & J EXTERMINATING COMPANY OF ALEXANDRIA**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 232,479
HONORABLE DONALD T. JOHNSON, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Gremillion, J., dissents and assigns written reasons.**

Robert G. Nida
Gold, Weems, Bruser, Sues & Rundell
Post Office Box 6118
Alexandria, LA 71307-6118
(318) 445-6471
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Jason Vidrine
    Sherry Vidrine

John G. Alsobrook
Ostendorf, Tate, Barnett & Wells
650 Poydras Street, Suite 1460
New Orleans, LA 70130
(504) 527-0700
COUNSEL FOR DEFENDANT/APPELLEE:
    J & J Exterminating Company of Alexandria

AMY, Judge.

The plaintiffs sought damages from the defendant termite company for what they allege was a negligent termite inspection report prepared prior to their purchase of a house. The defendant filed an exception of prematurity and, in the alternative, a motion to enforce arbitration due to an arbitration agreement contained in the report. The trial court sustained the exception and granted the motion to enforce the arbitration agreement. The plaintiffs appeal. For the following reasons, we affirm.

## Factual and Procedural Background

The plaintiffs, Jason Anthony Vidrine and Sherri Lynn Rae Vidrine, alleged that they entered into a purchase and sale agreement for the purchase of a residence in Cheneyville, Louisiana. The agreement was conditioned on the house passing a termite inspection. The petition indicates that the defendant, J&J Exterminating Company of Alexandria, Inc., performed a termite inspection of the residence on August 21, 2007. Thereafter, it issued a Wood Destroying Insect Report. The plaintiffs alleged that they purchased the residence after the report revealed no previously undetected termite damage. However, the plaintiffs asserted that they later discovered additional termite damage while performing renovations. They sought damages for what they alleged was a negligent inspection.

In response, the defendant filed a Dilatory Exception of Prematurity and/or alternatively, a Motion to Enforce Arbitration Clause. It entered the Wood Destroying Insect Report into evidence in support of its filing. The report includes the following clause:

### Arbitration Clause

Any party to this agreement shall agree that any controversy or claim between them arising out of or relating to this agreement shall be settled exclusively by arbitration. Such arbitration shall be conducted in accordance with the then current Commercial Arbitration Rules of the

American Arbitration Association. The decision of the arbitrator shall be a final and binding resolution of the disagreement, which may be entered and made enforceable by any court of competent jurisdiction. The parties hereto agree that neither party shall sue the other over anything contained in this agreement except for enforcement of the arbitrator's decision. In no event shall either party be liable to the other for indirect, special or consequential damages or loss of anticipated profits.

The plaintiffs questioned the validity of the clause asserting that it was not part of a contract, and that it was not entered into prior to the commencement of the inspection.

Following a hearing, the trial court sustained the exception of prematurity and granted the motion to enforce the arbitration clause.[1]

---

[1] In written reasons for ruling, the trial court explained:

This arbitration clause is located directly above the section of the report titled "Received by". Ms. Vidrine signed the report. However, the plaintiffs state that the signing of this section does not bind them to arbitration because Ms. Vidrine did not understand the concept of arbitration. The plaintiffs also argue that the report is written following completion of the actual work and consequently cannot constitute an agreement. Any contract between those entities would have to have been entered prior to the beginning of the work to be performed. The plaintiffs argue that the report is not a contract because the plaintiffs did not consent to arbitration. Moreover, the plaintiffs argue that J&J Exterminating Co. also did not sign the agreement; therefore the arbitration clause is invalid due to lack of mutuality.

This Court disagrees. In *Coleman v. Jim Walter Homes, Inc.*[,] 2007-1574, 982 So.2d 341 (La.App. 3 Cir. 2008), the Court stated "In determining whether a party is bound by an arbitration agreement, a court applies ordinary principles of contract. One of the conditions of a valid contract is consent of both parties."

In *Aguillard v. Auction Management Corp.*, 908 So.2d 1 (La. 2005), the Louisiana Supreme Court stated, "consent is called into question by the standard form, small print, and most especially the disadvantageous position of the accepting party, which is further emphasized by the potentially unequal bargaining power."

The Court went on to say that "even if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent and if it is not demonstrated that the non-drafting party did not consent or his consent is vitiated by error, the contract is not a contract of adhesion." *Id.* at 11.

Furthermore, the Court held, "Even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration."

After review of the report, it is the determination of this court that both parties consented to arbitration. Both parties signed the report. A representative of J&J Exterminating Company signed the report below the arbitration clause as well as the plaintiff Ms. Vidrine. The font of the arbitration clause is the same as that in the rest of the form. In fact, the title labeling the arbitration clause is bold and underlined to assure that the parties are aware of it. The plaintiff Ms. Vidrine read and signed the report. Thus, it is the ruling of this Court that the arbitration clause in the Wood

The plaintiffs appeal. They argue that the arbitration clause is contained only in a report instead of in a binding contract, that they did not consent to the agreement, and that the agreement was unenforceable as the defendant was not bound to arbitrate by the terms of the agreement.

**Discussion**

*Arbitration Agreements*

An action is deemed premature when it is brought prior to the right to enforce it has accrued. *LaCoste v. Pendleton Methodist Hosp., LLC*, 07-0008 (La. 9/5/07), 966 So.2d 519. The exception of prematurity, as provided by La.Code Civ. Proc. art. 926, contests whether a plaintiff's cause of action has matured to the point where it is ripe for judicial determination. *Id.* The exceptor bears the burden of proving prematurity. *Id.* Thus, we consider the parties' submissions in light of this standard and the applicable substantive law.

Arbitration agreements are favored in both state and federal law. *See* 9 U.S.C. § 2.[2] *See also* La.R.S. 9:2401.[3] As observed in *Aguillard v. Auction Mgmt. Corp.*,

_____

Destroying Insect Report is enforceable.

[2]       Section 2 of the Federal Arbitration Act provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract.

[3] Entitled "Validity of arbitration agreements," La.R.S. 9:4201 provides:

A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

04-2804, 04-2857 (La. 6/29/05), 908 So.2d 1, federal law concerning arbitration clauses preempts state law. However, "the states do retain the ability to regulate contracts involving arbitration agreements and may do so under general contract law[.]" *Id.* at 8. Thus, a central inquiry into the validity of an arbitration clause is the consent of the parties. *Id.* As discussed below, the plaintiffs contest the trial court's determination that they consented to the arbitration clause.

The defendant supported its exception by introducing the Wood Destroying Insect Report, which contains the subject arbitration clause. In pertinent part, the report reveals that: "[F]or and in consideration of the Price and Sum of $60 and State Fee $6 for a Total of $66[,] A qualified inspector employed by this company has carefully inspected all accessible areas of the structure(s) on the property located at the address below for termites and other wood destroying insects." In addition to details of the inspection, the report includes the arbitration clause, followed by the "signature and number of [the] inspector[.]" It also indicates that the report was requested by "Sherri Vidrine[,]" who is identified as the "purchaser." The box entitled "Report Received By" bears the name "Sherri Vidrine." The reverse side of the form contains a number of "terms and definitions" as well as "general information and conditions governing this report."[4]

Further, a joint stipulation of fact indicates, in part, that: "Following the inspection of the premises . . . on August 21, 2007 by J&J Exterminating Company of Alexandria, Inc., the inspector told Sherri Vidrine to sign in Block 16 which she

---

[4] The latter category includes a statement that: "No arbitration, other cause for action, or claim for damages shall be filed by any party until an inspection of the property has been made by an inspector of the Louisiana Structural Pest Control Commission."

did.  The inspector then gave Sherri Vidrine the original of the Wood Destroying Insect Report."

Review of the evidence supports the trial court's determination that the defendant met its burden of proving the prematurity of the plaintiffs' claim.  In *Aguillard*, 908 So.2d 1, the supreme court questioned the issue of consent to a written arbitration agreement by considering whether it was contained on a standard form, whether it was in a smaller font than the remainder of the agreement, and whether the parties were on an equal footing in the acceptance of the clause.  The Wood Destroying Insect report bears Ms. Vidrine's signature immediately beneath the arbitration clause, which is set apart from the remainder of the report.  The font of the clause is consistent with the remainder of report and the terms of the agreement affect both parties identically.  Consideration of these factors indicates that the trial court correctly enforced the arbitration clause.  However, we also address the plaintiffs' particular arguments raised in brief.

*Existence of a Contract to Arbitrate*

The plaintiffs first contend that the report cannot constitute a binding contract as it was executed after the inspection.  They assert that any contract concerning the inspection would have to have been entered prior to the beginning of the work to be performed.

This argument finds no support in the Louisiana Civil Code, as Article 1906 defines a contract as "an agreement by two or more parties whereby obligations are created, modified, or extinguished."  This provision anticipates that parties may agree to create an obligation or destroy or modify previously existing obligations.  Thus, to the extent that the parties contracted for the prospective performance of services

5

upon Ms. Vidrine's request for the inspection, the offer and acceptance of the report defined the terms of the contract as they existed from that point forward.

This argument lacks merit.

*Consent of the Plaintiffs*

Alternatively, the plaintiffs contend that there is no proof that they consented to arbitration. They note that Ms. Vidrine's signature is contained only in the "report received by" portion of the report, and that no signature is contained in the space provided for the signature of the owner/agent of the property or in that space provided for the signature of the purchaser of the property. They argue that the report's "received by" box is merely in the nature of a chain of custody provision.

First, we find no error in the trial court's acceptance of Ms. Vidrine's signature on the form as demonstration of her consent to the report. Further, in addition to Ms. Vidrine's signature on the report, the plaintiffs' petition reports that their claim is based on their reliance on that report. Thus, there is additional evidence of the report's acceptance. *See* La.Civ.Code art. 1927.[5] In short, the plaintiffs contradictorily claim that they relied on a valid contract in order to maintain their suit, but that they did not consent to one aspect of that contract, *i.e.*, the arbitration clause. This argument lacks merit.

---

[5] Article 1927 provides, in part, that: "Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." Further, "[u]nless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made."

6

*Mutuality of Obligation*

Finally, the plaintiffs argue that the report contains no identification of the defendant's willingness to be bound by the terms of the contract. However, the report the defendant company offered the report to the plaintiffs. Additionally, the wording of the arbitration clause provides that: "*Any party to this agreement* shall agree that *any controversy between them* arising out of or relating to this agreement shall be settled exclusively by arbitration." In fact, the clause contains multiple references to both parties and contains no indication that the defendant reserved a right to litigate any issue arising from the contract.

The plaintiffs also contend that, although the report was signed by the inspector, there was no proof that the inspector had the authority to bind the defendant. The plaintiffs assert that *Broussard v. Compulink Business Systems*, 41,276 (La.App. 2 Cir. 8/23/06), 939 So.2d 506, is persuasive. They argue in their brief that the second circuit found that no valid arbitration agreement existed in that case "because the party pursuing arbitration failed to prove that the agent who signed the agreement on behalf of the principal had authority to do so." However, *Broussard* involved a case in which the exceptor failed to prove the authority of *the plaintiff's employee* to accept the terms of a contract. The present case is distinguishable from *Broussard* as the report at issue was signed by one of the plaintiffs. Thus, the authority to accept on the plaintiffs' behalf was not at issue.

This final argument lacks merit.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed to the appellants, Jason Anthony Vidrine and Sherri Lynn Rae Vidrine.

**AFFIRMED.**

7

**JOSEPH VIDRINE, ET UX**

**VERSUS**

**J & J EXTERMINATING COMPANY OF ALEXANDRIA**

**GREMILLION, Judge, dissenting.**

I respectfully dissent from the opinion of the majority. I agree completely that arbitration agreements are and should be favored by law. It is also true that federal law preempts state law on the enforceability of arbitration agreements. However, the real issue in this case has nothing to do with either the merit or enforceability of a arbitration agreement in general. Rather, the issue here is whether an arbitration agreement existed in the first place. I am convinced that it did not.

I can certainly find no fault with majority's reliance on the Supreme Court case of *Aguillard v. Action Management Corp.*, 04-2804 (La. 6/29/05), 908 So.2d 1. This case has clearly become seminal in the area of arbitration agreements. However, even under *Aguillard*, the court should ask "whether a valid arbitration agreement exists." *NCO Portfolio Management, Inc. v. Gougisha*, 07-604, p. 8 (La.App. 5 Cir. 4/29/08), 985 So.2d 731, 735, *writ denied*, 08-1146 (La. 9/26/08), 992 So.2d 986.

Here, J & J presented Ms. Vidrine with a standard-form termite damage report. The trial court as well as the majority was clearly moved by the clarity of the arbitration clause found in that report. I agree, that the arbitration clause, itself, was clear and unambiguous.

However, the document provided to the plaintiff contained more than just an arbitration clause. It contained two signature blocks for Ms. Vidrine.

Ms. Vidrine was to sign the first signature block to indicate that she received

the report. She did, in fact, sign that block, thereby acknowledging receipt of the report. The majority simply stops its examination of the contract at this point as if nothing follows.

If there was nothing after this first signature block, I would completely agree with the majority's opinion that J & J could rely on that signature "as demonstration of her consent to the report." There is, however, more to this contract.

There is a second signature block. Where the first signature merely acknowledges receipt, the second signature block does much more. As the document itself indicates, signing it would have memorialized Ms. Vidrine's agreement "to the terms and conditions" of the contract. That brings us to the singular, critical fact in this analysis: Ms. Vidrine **did not** sign this second signature block.

There are four important Civil Code articles at play here. The first is La.Civ. Code art. 1947 which provides that when, as is the case here, there is "an absence of a legal requirement," and "the parties have contemplated a certain form, it is presumed that they do not intend to be bound until a contract is executed in that form." In this case, it is abundantly clear that the parties did contemplate a certain form: a one-page document requiring Ms. Vidrine to sign once to acknowledge receipt and a second time to confirm her agreement to the "terms and conditions" of the contract. Accordingly, the majority should have presumed that Ms. Vidrine did not intend to be bound to the terms and conditions of that contract.

Next, La.Civ. Code art. 2049 says that every part of a contract "must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." Here, the majority does not merely render the second signature block ineffective; rather, it ignores it completely.

The very next Civil Code article, 2050, reads in its entirety as follows:

2

"Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."

If I may be indulged a colloquialism, this is provision is where the rubber meets the road. Had the majority interpreted each provision of the contract in light of the others, logic would have forced it to conclude that the first signed signature block was merely to acknowledge receipt and the second signature block was to confirm consent to the arbitration clause, as well as all of the other terms and conditions of the agreement. However, the majority chose to simply disregard the second—and more important—signature line.

I see absolutely no ambiguity here. The parties clearly contemplated that Ms. Vidrine would sign once to acknowledge receipt of the form. This she did. She would sign a second time to "agree to the terms and conditions" of the contract. This she simply did not do.

Despite the simplicity and the clarity of these facts, let us assume for the sake of argument that we are left with what by La.Civ. Code art. 2056 describes as a "case of doubt." In such an instance, the code provides that the contract must be interpreted against J & J because it "furnished the text," and because the contract was J & J's "standard-form." La.Civ. Code art. 2056. In other words, any ambiguity as to the meaning of a contract must be eliminated by interpreting the contract against the party who prepared it. *Sabine Construction Co., Inc. v. Cameron Sewage Department, No. 1*, 298 So.2d 319 (La.App. 3 Cir. 1974).

As the *Aguillard* court affirmed, a signature on a contract means something and it should not be ignored. *Aguillard*, 908 So.2d 1, 22. It must, therefore, be true, for even a greater reason, that the absence of a signature means something.

The arbitration clause in this contract is clear, and it is favored by both state

3

and federal law.  However, in this case, the plaintiff did not agree to it.  I, therefore, would have respectfully reversed the trial court's ruling and denied the exception of prematurity.